**UNITED STATES of America and Combustion Engineering, Inc.**

**v.**

**TOWN OF WINDSOR, CONNECTICUT and William J. Kelly, the Building Inspector and Zoning Enforcement Officer of the Town of Windsor, and his successors in office.**

**Civ. No. H–76–248.**

United States District Court, D. Connecticut.

July 30, 1980.

---

Mikal H. Frey, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for the United States.

Brandon Hickey, Hartford, Conn., for Combustion Engineering, Inc.

Vincent W. Oswecki, Jr., Windsor, Conn., for defendants.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

CLARIE, Chief Judge.

The parties have filed cross–motions for summary judgment pursuant to Rule 56, Fed.R.Civ.P. The United States urges that the Supremacy Clause of the United States Constitution prohibits the defendants, the Town of Windsor and its Building Inspector and Zoning Enforcement Officer, from imposing the state building code requirements and collecting a building permit fee with

respect to the construction of a jointly sponsored experimental coal gasification research project. The Government funds two–thirds (⅔) of the project, has title to the facilities built in connection with the project, and leases the land upon which it is conducted. Combustion Engineering, Inc. is the co–plaintiff with the United States in this declaratory judgment action. It funds one–third (⅓) of this joint project, is responsible for the design, construction and operation of the facility, and owns the land upon which the unit rests. The Town of Windsor asserts that it is entitled to judgment as a matter of law on the grounds: (1) that the building requirements, including the permit fee, are lawfully enforced, because they are directed against only the fee owner of the land, Combustion Engineering, Inc.; (2) that the Government has never accepted exclusive jurisdiction over the leased land upon which the research facility has been built, and (3) that there is no federal law with which the building code requirements conflict. The Court finds that to the extent that the regulations and the fee are not imposed by law on the Federal Government or its property, there is no conflict between the state and local requirements and federal law which would bar the defendants from enforcing the local building code. The Court finds that the Town may enforce said code requirements against the plaintiff Combustion Engineering, Inc., as the owner of the land and the builder of the project, but to the extent that said requirements are directed by law against the United States or its property, they are not enforceable. Summary judgment shall enter consistent with these findings.

## Jurisdiction

Jurisdiction over this action is conferred on this Court by 28 U.S.C. §§ 1345 and 1331. The action was commenced by the United States as a plaintiff; and it arises under the Constitution of the United States, with the matter in controversy exceeding Ten Thousand Dollars ($10,000), exclusive of interest and costs.

## Facts

The United States of America and the Combustion Engineering, Inc. ("CE") brought this suit against the Town of Windsor and William J. Kelly, the Building Inspector and Zoning Enforcement Officer of the Town of Windsor, seeking a declaration that by reason of the Supremacy Clause of the United States Constitution, the various provisions of the Connecticut General Statutes, the Connecticut Basic Building Code, the Town of Windsor Zoning Regulations, and the Town of Windsor ordinance, which require a building permit and payment of a building permit fee, are neither applicable to nor enforceable against the United States or its contractor, CE, or their officers or agents, in connection with the construction of a coal gasification Process Development Unit ("PDU") in the Town of Windsor, Connecticut.

The United States and CE entered into a contract on October 1, 1974, according to which CE is responsible for the design, construction and operation of a PDU test facility funded two–thirds (⅔) by the United States and one–third (⅓) by CE. The land on which the PDU is built is owned by CE and leased to the Government at an annual rate of One Dollar ($1.00), renewable from year to year until 1989 (Court X–B).

According to the contract between the Government and CE, the latter is independently responsible for the PDU project. CE is not the Government's agent; it cannot bind the Government directly for its contract purchases. However, with respect to all of the property purchased by CE for the construction of the PDU for which it is entitled to be reimbursed, title vests in the Government upon delivery of such property to CE by the vendor. Title to the completed PDU would vest in the Government. Consistent with these contract terms granting title to the PDU in the Government, the lease provides that within one year from the end of the lease, the Government shall remove such property and restore the demised premises. However, CE and the Government may agree to allow the latter

to abandon the facilities, which include four buildings and one large gasifier tower, in which event title to such property would vest in CE. (Section IX B, Court X–B).

Construction of the PDU by the independent contractor, CE, began in March, 1976. Shortly thereafter, the defendant William J. Kelly, in his capacity as Building Inspector and Zoning Enforcement Officer of the Town of Windsor, advised CE, owner of the land and builder of the project, that it was in violation of the Connecticut General Statutes, the Connecticut Basic Building Code, and the Windsor Zoning Regulations, because it had neither obtained a building permit nor requested an inspection prior to commencing construction. The defendant Inspector ordered that CE cease construction of the PDU, apply for a building permit and pay a building permit fee of approximately Sixty–Six Thousand Dollars ($66,000 [1]). CE failed to pay the fee and the defendant Town of Windsor commenced a state court action to stay construction.

Then, in order to complete construction and continue the project, the United States and CE entered into a stipulation with the defendants, signed on June 22, 1976. The stipulation provides, in relevant part, that whereas the Town of Windsor contends that CE must obtain a building permit and pay a building permit fee with respect to the construction of the PDU; the United States, through its Energy Research and Development Administration (ERDA), contends that no permit or fee can be required (because the PDU is being constructed at ERDA's direction pursuant to Congressional action relating to the development of more efficient methods of utilizing coal, and because the United States will be the owner of the PDU); and the Town of Windsor has withdrawn without prejudice its state court action; it is agreed that CE will obtain a building permit under protest and pay into escrow the permit fee of approximately $66,000. (Court X–A). The permit fee is now being held in a separate trust account pending the outcome of this litigation.

Paragraphs 8, 12, 16, and 17 of the complaint frame the issues raised by the cross–motions for summary judgment. The plaintiffs allege in paragraph 12 that the defendant William J. Kelly, in his capacity as Building Inspector and Zoning Enforcement Officer, told CE representatives that no building permit would be required, because the United States was to be the owner of the PDU. Such allegation is included in the complaint as arguable grounds for estopping the Town of Windsor from enforcing the permit and fee requirements. The other cited paragraphs represent that the requirements imposed by the state and local laws and regulations sought to be enforced by the defendants are obligations of the United States, the owner of the structures to be erected. The plaintiffs contend that such provisions cannot be enforced against the United States, or CE acting at the direction of the United States, because by virtue of the Supremacy Clause of the United States Constitution, the Federal Government's activities are free from regulation, interference and taxation by the states and their political subdivisions. The Court's task on these cross–motions for summary judgment is to determine whether there is any genuine issue as to the material facts alleged, and whether or to what extent either moving party is entitled to a judgment as a matter of law pursuant to Rule 56, Fed.R.Civ.P.

*Discussion*

The coal gasification PDU project was undertaken by the Government and CE pursuant to an act of Congress enacted in July of 1960, which granted authority to the Secretary of the Interior and the Office of Coal Research to contract for the development through research of "new and more efficient methods of mining, preparing, and utilizing coal." 30 U.S.C. § 662(1).[2]

1. See Statement of Material Facts of the United States, filed November 30, 1979, p. 2.

2. Shortly after the execution of the contract between the Government and CE on October 1, 1974, Congress enacted the Energy Reorganization Act of 1974 which, among other things:

Notably lacking in the Energy Research and Development Acts,[3] as conceded by the Government in its brief, are any specific provisions which relieve the ERDA, or private persons engaged by ERDA, from state and local taxation and regulation. The law provides, however, that the Secretary of the Interior (now the ERDA administrator, per 42 U.S.C. § 5814(e)(1)) shall *"cooperate to the fullest extent possible* with . . . State governments, and all other interested agencies, governmental and nongovernmental." 30 U.S.C. § 662(4), (emphasis added).

The provisions of the state and local laws and regulations, which are sought be the plaintiffs to be declared inapplicable and unenforceable in connection with the construction of the PDU, are those which require a building permit and the payment of a building permit fee. For example, Connecticut General Statute § 19–398 provides:

"After October 1, 1970, *no building or structure shall be constructed* or altered *until an application has been filed* with the building official *and a permit issued.* Such permit shall be issued or refused, in whole or in part, within 30 days after the date of an application. *No permit shall be issued except upon application of the owner of the premises affected or his authorized agent."* (emphasis added).

According to the relevant Connecticut provisions, a permit is issued only after the building official's inspection determining whether there has been compliance with the State Building Code, Conn.Gen.Stat. § 19–397 and Conn. Building Code § 114.0, and after the applicable fees have been paid, Conn. Building Code, § 118.0. The State Building Code, the compliance with which is a prerequisite for obtaining a permit, provides standards for regulating the design, construction and use of buildings or structures to be erected in any town, city or borough in Connecticut. Conn.Gen.Stat. §§ 19–395 and 19–395e.

The amount of the building permit fee, the payment of which is a prerequisite for obtaining a permit, is based on the volume of the structure to be erected or as provided by local ordinance. Conn. Building Code § 118.2. The Town of Windsor ordinance (DX–H) provides that the cost of the project is used as the general standard for determining the amount of the permit fee. The fee is imposed in order to defray the costs of inspection. *See Welch v. Hotchkiss,* 39 Conn. 140 (1872).[4]

This federal declaratory judgment action was commenced to prevent the defendants, the Town of Windsor and William J. Kelly, from regulating the design, construction, and use of the joint Government–CE PDU through the requirement of a building permit, and from charging the applicable fee.

The Town concedes that the law in Connecticut is not entirely clear as to who is held responsible for compliance with the regulations and payment of the fee–the landowner, the building owner, or the builder. Section 19–398 of the Connecticut General Statutes, quoted above, provides that no permit shall be issued, except upon the application of the "owner of the premises" or his authorized agent. The Connecticut Basic Building Code states that when one other than the "owner in fee" applies for a permit, the application must be accompa-

---

(1) declared that the general welfare and the common defense and security required the development of all energy resources, 42 U.S.C. § 5801, (2) transferred to the Energy Research and Development Administrator the authority of the Secretary of the Interior to enter into such contracts as the one in issue here, 42 U.S.C. § 5814(e)(1), and (3) declared that the ERDA Administrator shall support cooperative research and development projects, 42 U.S.C. § 5813. In December of 1974, Congress passed the Federal Non–nuclear Energy Research and Development Act, in which it stated its findings

that the Nation must undertake a research, development and demonstration program in nonnuclear energy technologies with an investment which may exceed $20 Billion over the next decade, and it declared such program must be vigorously conducted.

**3.** See Note 2 *supra* and accompanying text.

**4.** The plaintiffs have not specifically challenged the legality of the method of determining the permit fee, but have focused instead on the legality of the imposition of the fee.

nied by an authorizing affidavit.[5] These provisions imply that the primary legal obligation to obtain a permit and comply with the regulations rests with the *landowner* (as the "owner of the premises" and the "owner in fee"), but in addition, that such landowner may authorize agents to perform on his behalf that which is his personal obligation as a landowner.

On the other hand, § 113.1 of the Conn. Building Code states broadly that it shall be unlawful to construct a building or to change a prohibited use in any building without first filing an application and obtaining a permit. Section 122.1 of the Conn. Building Code requires that notice directing the discontinuance of an illegal action or condition be served on the person responsible for the erection, construction, use or occupancy of a building or structure in violation of the code. And § 122.3 imposes penalties for violations upon any persons who shall violate a provision of the Code or shall fail to comply with any of the requirements thereof, or who shall erect, construct, or repair a building or structure in violation of any approved plan or permit. The language contained in these three provisions indicates that the *builder* may be held liable for violations, and that liability may also be imposed upon the *owner* of a building containing violations of either the code or a previously obtained permit.

■ Under Connecticut law, the regulations and the fee may legally be imposed upon the landowner, the building owner, or the builder. There is nothing which indicates that the liability of one party depends upon the liability of another; the parties' obligations to comply with said building requirements are several, not joint. The Court's concern in the present case is thus limited to the legality of the attempt by the defendants to enforce the code requirements against only CE, the landowner and the builder of the PDU, and not the Federal Government, the title holder to the PDU.

■ Irrespective of any alternative possibilities regarding the interpretation and application of the State law in connection with the enforcement of the building code requirements, such enforcement is limited by the Supremacy Clause of the United States Constitution. The plaintiffs in this declaratory judgment action have. thus raised a substantial and unavoidable federal question: namely, whether or not by reason of the Supremacy Clause and the applicable federal law, the United States or CE, or both, may avoid the legal imposition by the defendants of the building requirements.[6]

The Supremacy Clause of Article VI of the United States Constitution provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary Notwithstanding."

In deciding the question of the plaintiffs' immunity from the building requirements in issue by reason of this clause, the Court must consider the effect on the parties of the applicable state and local laws sought to

---

5. Section 113.3 of the Connecticut Basic Building Code provides:

"*By Whom Application is Made*: Application for a permit shall be made by the owner or lessee of the building or structure, or agent of either, or by the licensed engineer or architect employed in connection with the proposed work. If the application is made by a person other than the owner in fee, it shall be accompanied by a duly verified affidavit of the owner or the qualified person making the application that the proposed work is authorized by the owner in fee and that the applicant is authorized to make such application. The full names and addresses of the owner, lessee, applicant, and of the responsible officers, if the owner or lessee is a corporate body, shall be stated in the application."

6. Since the applicable federal statutes could be found either to grant or to deny immunity from the requirements in issue, as to the United States or CE, or both, no matter how the State of Connecticut would resolve the question of who may be held legally responsible for the compliance therewith, the Court is not presented with one of the exceptional circumstances where it would abstain from the exercise of federal jurisdiction, merely because of the unsettled nature of the state law. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

be enforced and the intended reach of the applicable federal Energy Research and Development Acts, both in light of the constitutional doctrine of federal supremacy.

It is to be noted first, that Congress has not accepted exclusive jurisdiction over the land upon which the PDU is erected by legislative act, pursuant to United States Constitution Article I § 8 Cl. 17. The State of Connecticut has not ceded exclusive jurisdiction over lands leased by the United States, *See* Conn.Gen.Stat. § 48–1; and since no federal official has filed with the governor of Connecticut a notice of acceptance of jurisdiction, (PX–D), there is a conclusive presumption that no such jurisdiction has been accepted. 40 U.S.C. § 255. Thus, the Court does not face a claim by the Government that only federal statutes and regulations apply to the PDU project to the exclusion of state law, or that only such state law applies which was in effect at the time of the acquisition of the property by the United States. *See Paul v. United States*, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1939).

The Court is presented, on the other hand, with the Government's more general claim, that by reason of its involvement in the PDU project pursuant to the Energy Acts, there devolves a broad immunity against the defendants' taxation or regulation in favor of the Government, its contractor CE, and the agents and officers of each. An extensive review of the precedents applying the doctrine of supremacy in cases wherein the Federal Government has challenged state and local taxes or regulations as applied to Government–supported activities reveals, however, that such sweeping grants of immunity have been discarded, as explained by the Supreme Court in the context of a tax immunity case, in favor of

> "*observing* . . . *close distinctions* in order to maintain the essential freedom of government in performing its function, without unduly limiting the taxing power which is equally essential to both Nation and State under our dual system."

*James v. Dravo Contracting Co.*, 302 U.S. 134, 150, 58 S.Ct. 208, 216, 82 L.Ed. 155 (1937) (emphasis added).

■ The finely–tuned constitutional rules which have evolved after decades of "close distinctions" can be applied by the Court in the instant case by dissecting the case into its two basic parts: the legal imposition of the defendants' building requirements on the Government and its agents, and the legal imposition of said requirements on CE and its agents. Respecting the former, the law provides that absent express Congressional consent, where the legal incidence of state or local taxation or regulation falls on the Federal Government or its instrumentalities, such is prohibited by the Supremacy Clause. *United States v. Tax Commissioner of Mississippi*, 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975); *United States v. County of Allegheny*, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944); *Maricopa County v. Valley Bank*, 318 U.S. 357, 63 S.Ct. 587, 87 L.Ed. 834 (1943); *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976); *Mayo v. United States*, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943).

■ Although the parties take issue on the question whether the permit fee should be deemed an *ad valorem tax* or merely a charge to defray the costs of the state regulation, this particular fine distinction is one that is unnecessary to make, insofar as such a distinction would not affect the basic immunity of the United States in this case, that is, the immunity against the imposition of either a tax or a regulation, where the legal incidence thereof falls upon the Federal Government itself.

■ As to *taxation* by the state or local government, when the legal incidence of a tax is imposed upon the Federal Government, such a tax violates the principles of *McCullough v. Maryland*, 4 Wheat. 316, 4 L.Ed. 579 (1819), prohibiting state taxation of United States' instrumentalities. The "legal incidence" falls upon the Government if a statutory scheme for collecting a tax by its terms "unavoidably

requires" as a matter of law that the fee "pass on" to the Government or one of its instrumentalities. *United States v. Tax Commissioner of Mississippi, supra.* This governmental immunity from taxes, required by state law to fall on the Government, extends to agents of the Government, *Kern–Limerick, Inc. v. Scurlock,* 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546 (1954), as well as to others considered to be "instrumentalities." *Rohr Corp. v. San Diego County,* 362 U.S. 628, 80 S.Ct. 1050, 4 L.Ed.2d 1002 (1960); *United States v. City of Adair,* 539 F.2d 1185 (8th Cir. 1976); *County of Culpepper, Virginia v. Etter,* 231 F.Supp. 999 (E.D.Va.1963).[7] Only Congress has the authority to determine whether and to what extent its instrumentalities are immune from taxes, *Maricopa County v. Valley Bank, supra,* and such authority must be found in "clear and specific language to that effect." *See United States v. United Mine Workers,* 330 U.S. 258, 272, 67 S.Ct. 677, 686, 91 L.Ed. 884 (1947).

■■ The law is similar with respect to *regulation* by a state or local government: when the legal incidence of a regulation is imposed upon the Federal Government, its instrumentalities or its property, such regulation of federal installations is constitutionally impermissible absent a "clear and unambiguous" Congressional authorization. *Hancock v. Train, supra,* 426 U.S. at 179, 96 S.Ct. at 2012; *Accord, EPA v. State Water Resources Control Board,* 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976); *See Mayo v. United States, supra* (The state regulation and fees laid directly on the United States' property without an affirmative

Congressional declaration was prohibited by the Supremacy Clause). The Supreme Court's statement in *Tax Commissioner of Mississippi, supra,* 421 U.S. 608–609, 95 S.Ct. 1878, immunizing the Government and its instrumentalities when the "legal incidence" of a tax falls on the Government aptly describes the state of the law regarding the "legal incidence" of a regulation on the Federal Government. No case law derogates from the conclusion that absent an express Congressional mandate, there is immunity from regulation when the terms of such regulation requires its imposition on the Government, its instrumentalities or its property, as a matter of law.

■ With respect to this project, there is no Congressional mandate waiving the Government's immunity from either *taxation* or *regulation.* Therefore, to the extent that in Connecticut the legal incidence of the building regulations or the building permit fee would fall upon the Federal Government as title owner of the PDU, said requirements are unenforceable.[8]

■ The second part of the case deals with the imposition of the building code requirements where the legal incidence falls upon CE and its agents. The law provides that where the legal incidence of state or local taxes or regulations does *not* fall on the Federal Government or its instrumentalities, enforcement of said requirements is not prohibited by the Supremacy Clause, unless said requirements either conflict with a Federal statute or operate so as to discriminate against the Government. *See*

---

7. It is noted that the Government's decision "to utilize the skill, technical know-how, knowledge and experience of American industry" to conduct various activities in connection with coal gasification research does not in itself make CE a government instrumentality. *See United States v. Boyd,* 378 U.S. 39, 47–48, 84 S.Ct. 1518, 1523-24, 12 L.Ed.2d 713 (1964); *James v. Dravo Contracting Co.,* 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937); *United States v. Pennsylvania Environmental Hearing Board,* 584 F.2d 1273 (3rd Cir. 1978).

8. It is unnecessary in the context of this federal declaratory judgment action for the Court to reach a decision which completely outlines the

manner by which the law of Connecticut imposes the legal incidence of the various building regulations and the building permit fee, in view of the Court's holding which declares what the federal law is. This holding precludes the defendants from enforcing the building requirements to the extent that such are imposed by law against the Federal Government or its property, and it permits the enforcement of said requirements, including the collection of the building permit fee in issue, against CE and its agents, insofar as such requirements are *not* imposed by law against the Federal Government and its property.

*James v. Dravo Contracting Co., supra; Graves v. New York ex rel. O'Keefe*, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927 (1939); *Alabama v. King & Boozer*, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1941); *United States v. State of Maryland*, 471 F.Supp. 1030 (D.Md. 1979); *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1939); *Penn Dairies v. Pennsylvania Milk Control Commission*, 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. 748 (1943); *United States v. Pennsylvania Environmental Hearing Board*, 584 F.2d 1273 (3d Cir. 1978); *Mariniello v. Shell Oil Co.*, 511 F.2d 853 (3d Cir. 1975); *DeKalb County, Georgia v. Henry C. Beck Company*, 382 F.2d 992 (5th Cir. 1967); and *Public Housing Administration v. Bristol Township*, 146 F.Supp. 859 (E.D.Pa. 1956).

■ As to non–discriminatory *taxation* by a state or local government, where the "legal incidence" falls on one other than the Federal Government or its instrumentalities, that is, where the statutory scheme by its terms does *not* "unavoidably require" as a matter of law that the fee "pass on" to the Federal Government, *United States v. Tax Commissioner of Mississippi, supra*, such taxation is not of necessity barred by the Supremacy Clause. The reason for this is that the *economic burden* on a federal function of a state tax imposed on one who deals with the Federal Government does not render the tax unconstitutional, so long as the tax is imposed equally on the other similarly situated constituents of the state. *United States v. County of Fresno*, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977). Thus, in *James v. Dravo Contracting Co., supra*, an independent construction contractor performing services for the United States was held liable for a non–discriminatory tax on his gross receipts. In *Graves v. New York ex rel. O'Keefe, supra*, a non–discriminatory tax on Government officers was allowed. In *Alabama v. King & Boozer, supra*, the Supreme Court approved a state sales tax which had been imposed upon an independent contractor, who was a purchaser of property the title to which passed immediately to the Government upon the purchase and who, like CE in this case, was not an agent of the Government, but was reimbursed for its purchases made in connection with a Government project. And in *United States v. State of Maryland*, 471 F.Supp. 1030 (D.Md.1979) the District Court sustained as a valid state tax an environmental surcharge which was not required to be passed on to federal agencies.

The freedom of the states to tax nongovernmental entities is especially evidenced in the line of cases which have allowed such taxes even on the use or possession by a private entity of governmental property. *See, e. g., United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958); *United States v. Township of Muskegon*, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958); *City of Detroit v. Murray Corporation*, 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958); *United States v. Boyd, supra*; and *United States v. County of Fresno, supra*. In the *Fresno* case, the Supreme Court noted that the one arguable departure from the principle that non–discriminatory use taxes are permissible, *United States v. Allegheny County*, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944), a case cited by the Government in this suit, has been overruled by the *City of Detroit* cases, *supra*, insofar as it held that a tax measured by the value of Government–owned property may never be imposed on a private party who is using it. *Fresno, supra*, 429 U.S. at 462, fn. 10, 97 S.Ct. at 462, fn. 10.

■ Thus, the authority of the state and local governments to tax nongovernmental entities is respected under the United States Constitution, providing Congress has not granted an immunity in favor of the person on whom the tax falls. No statement regarding such a Congressional grant of immunity is indicated in the case at hand, and the "silence of Congress implies immunity no more than does the silence of the Constitution," *Graves v. New York ex rel. O'Keefe, supra*, 306 U.S. at 480, 59 S.Ct. at 598. Accordingly, CE and its agents, as private independent contractors, are not protected under federal law against

liability for the building permit fee, even if such fee is deemed a tax.

 The law is similar with respect to *regulation* by a state or local government: where the legal incidence of a regulation falls on one other than the Government or its instrumentalities, such regulation is not of necessity barred by the Supremacy Clause. Thus, in *James Stewart & Co. v. Sadrakula, supra,* a state law imposing certain building requirements upon a contractor constructing a Government building was affirmatively sanctioned. In *Penn Dairies v. Pennsylvania Milk Control Commission, supra,* the Supreme Court approved a state regulation which fixed the price of milk but did not impose a prohibition on the National Government or its officers. In *United States v. Pennsylvania Environmental Hearing Board, supra,* the state was permitted to regulate a Federal Government–owned plant where the pollution regulation in issue, which resulted in the imposition of a fine, fell upon the operator of the plant, an independent contractor unshielded from the operation of state controls. And in *Public Housing Administration v. Bristol Township, supra,* a township was allowed to issue a stop–work order against an electrical contractor, under contract on a public housing project, who had failed to procure a permit. *Accord, Baltimore & A.R. Co. v. Lichtenberg,* 176 Md. 383, 4 A.2d 734 (Ct. App.Md.1939); *Baltimore v. Linthicum,* 170 Md. 245, 183 A. 531 (1936).

 The crucial issue in challenges based upon the Supremacy Clause to state regulation of nongovernmental entities engaged in activity on behalf of the Government, therefore, is whether the regulation is *contrary to* or *preempted by* some federal statute. "The Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the . . . Laws of any State *to the Contrary* Notwithstanding." U.S.Const. Art. VI. (emphasis added).

Judge Van Dusen articulated the careful approach necessary in deciding this more narrow supremacy issue when he held that an electrical contractor working for the Government was subject to local regulation, in *Bristol Township, supra.*

"The United States Supreme Court has consistently held that Congress, in enacting legislation within its constitutional authority, will not be deemed to have intended to invalidate state or local rules for protection of the public safely unless its purpose to do so is clearly stated. [citations omitted]

"The United States Supreme Court has construed the language of Article IV, Section 3, of the Constitution as requiring that the method of disposing of Government property 'must be consistent with the foundation principles of our dual system of government and must not be contrived to govern the concerns reserved to the States.' *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 338, [56 S.Ct. 466, 478, 80 L.Ed. 688] (1936).

"The United States Supreme Court has repeatedly stated that the extension of federal control into traditional local fields is a ' " ' 'delicate exercise of legislative policy in achieving a wise accommodation between the needs of central control and the lively maintenance of local institutions.' " ' See *Davies Warehouse Co. v. Bowles,* 321 U.S. 144, 154, 64 S.Ct. 474, 480, 88 L.Ed. 635 (1944)." 146 F.Supp. at 864. (footnotes omitted).

The Third Circuit observed, in *Mariniello v. Shell Oil Company, supra :*

"In recent times, the Supreme Court has employed the Supremacy Clause sparingly to strike down state law. Even where extensive federal regulatory schemes have been enacted, if there is no express Congressional language of preemption, states have been allowed to act in the interstices of the federal regulatory matrix. Also, states may require more stringent standards than those designed by Congress, and may otherwise adopt law affecting the subject of a federal statute, so long as the federal purpose is not undermined." 511 F.2d at 857 (footnotes omitted).

*See Generally Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157–158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978).

There have been instances where Congress has made clear its intentions regarding limitations on state and local government regulations, see e.g., the former Lanham Act dealing with defense housing, 42 U.S.C. § 1521, (exempting public housing under the act from local building code requirements). In such a case, the state or local law or regulation must give way by the express authority of the higher law, the federal statute. Absent such manifest intent by Congress, state or local requirements are avoided only if the Court determines that the Government has demonstrated an incongruity between the applicable state or local provision and the evident purpose and operation of the federal law. Such an incongruity was demonstrated, for example, in *Public Utilities Commission of California v. United States*, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). In that case, the Supreme Court found that Congress had provided a comprehensive policy related to Government procurement, which sanctioned the negotiation of rates for shipment of federal property. The Court also found that the California Code would have frustrated this Congressional policy and held the state regulation could not stand.

Balancing state and local action against federal policy is not always an easy task. In *DeKalb County, Georgia v. Henry C. Beck Company*, 382 F.2d 992 (5th Cir. 1967), the Fifth Circuit remanded a case to gather more information to serve as a basis for deciding one such delicate federal–state matter, which involved the collection of a permit fee in connection with the construction of a hospital for the Veteran's Administration.

The defendants here seek compliance with state and local building regulations and collection of the building permit fee from the plaintiff CE. The engineering company, CE, is an independent contractor, hired by the Federal Government to assist in the research and development of a PDU, and owner of the land upon which the facil-

ities in issue are built. It does not claim to be a government instrumentality.[9]

The Court discerns that the applicable state law provides for the enforcement of the building requirements against both the owner of the land and the builder of the structures.[10] The plaintiffs have not shown the Court anything to indicate that Congress, in any of the applicable Energy Research and Development Acts, intended that independent contractors or landowners be extended an immunity against such requirements. Indeed, the only relevant provision of federal law cited would lead to the conclusion that state and local regulations should be heeded to the "fullest extent possible."[11] There surely has been no showing that such cooperation is not possible.

■ Without a Congressional mandate that the Government's immunity be extended beyond its own property and instrumentalities, the Court is faced with a situation similar to that described by the Third Circuit in *United States v. Pennsylvania Environmental Hearing Board, supra*:

". . . the Government has deliberately opted for the 'genius' of private enterprise . . . . In so choosing, the Government enjoys the benefits that are derived from private operation, but by the same measure, it must also suffer any reciprocal burdens. One of these burdens is the responsibility of [the private entity's] compliance with state . . . regulations." 584 F.2d at 1279.

Accordingly, the Supremacy Clause and the federal law do not bar the defendants' enforcement against CE or its agents of the building code requirements, including the collection of the building permit fee in the amount set aside in trust pursuant to the parties' stipulation.

■ One final issue arguably was raised in paragraph 12 of the complaint, which alleges that the defendant William J. Kelly told CE representatives that no building

---

**9.** See *note 7, supra.*

**10.** See discussion at pp. 586–587 and *note 8 supra.*

**11.** See 42 U.S.C. § 5814(e)(1), *supra.*

permit would be required, because of the Government's ownership of the PDU. However, the plaintiffs have not made the argument that the defendants should be estopped on the basis of that alleged representation; and the Court notes that because there is no allegation that the defendant Kelly's statement was authorized, or that it was intended to induce the plaintiffs to act upon the belief that no permit would be required, or that the plaintiffs have changed their positions based upon such statement, an estoppel claim has not been made out. *See Dupuis v. Submarine Base Credit Union, Inc.*, 170 Conn. 344, 365 A.2d 1093 (1976); *State of Connecticut v. Stonybrook, Inc.*, 149 Conn. 492, 494, 181 A.2d 601 (1962).

The foregoing opinion shall constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a). SO ORDERED.