[No. B028885. Second Dist., Div. Six. July 27, 1988.]

CARLIE SMITH, Plaintiff and Appellant, v.
COUNTY OF SANTA BARBARA, Defendant and Respondent.

COUNSEL

Cook, Berryhill, Edwards & Miller, Thomas H. Edwards, Colleen Parent-Beall and Ralph Goodson for Plaintiff and Appellant.

Kenneth L. Nelson, County Counsel, and Jed Beebe, Deputy County Counsel, for Defendant and Respondent.

OPINION

**STONE (S. J.), P. J.**—Here we hold that the federal preemption doctrine does not prohibit the imposition of county regulations on the construction of a building by a private developer which is intended for lease to a federal agency.

*Background*

Appellant Carlie Smith seeks damages and the refund of building fees he paid to the County of Santa Barbara (respondent) as the result of respondent's alleged unlawful interference with his construction project.

In August 1981, appellant received a solicitation for offers from the United States Forest Service (Forest Service) to lease 25,700 square feet of office space in the Goleta area, including space for an automotive and radio shop. The Forest Service was seeking to obtain space for its Los Padres National Forest headquarters which was then scattered among several buildings. The solicitation called for occupancy on October 1, 1982 (the date the Forest Service's existing lease expired), and contained numerous building specifications.

The solicitation required the successful offeror to sign a United States Government lease, and stated that "[t]he unconditional acceptance of an offer received in response to the Solicitation establishes a valid contract extending to all covenants of the Solicitation, offer and acceptance, between the offeror and the Government." However, the federal government will not sign a lease for office space until the building is available for occupancy by the government.

The solicitation also provided: "The Lessor, as a part of the rental consideration, agrees to comply with all codes and ordinances applicable to the ownership and operation of the building in which the leased space is situated and, at his own expense, to obtain all necessary permits and related items."

One month later, appellant submitted a proposal to lease space which offered to construct a building to Forest Service specifications at a site on Calle Real in Goleta. On October 26, 1981, the leasing officer for the Forest Service, Mr. Hersko, sent appellant a letter "confirming" his offer, subject to the approval by the Forest Service of his plans and the rental value of the property.

In November 1981, appellant met with representatives of the County of Santa Barbara to show them preliminary plans for the building. Appellant explained that he was obligated to furnish the building by October 1982 and requested that the county look into exempting the development as a federal project.

Another meeting was held one month later, attended by Forest Service and county representatives. Appellant stated that he had a five-year lease with the Forest Service. He was requested to provide documentary evidence of the project's relationship with the Forest Service. He responded with a letter which stated that the proposed building "is leased to and will be occuppied [sic] exclusively by the U.S. Forest Service." Enclosed with the letter was Mr. Hersko's written acceptance of appellant's lease proposal.

Based upon the information supplied by appellant and a review of the documents by the county counsel's office, Cherie Jones of the county planning department sent appellant a letter in December 1981, acknowledging the project was regarded as exempt from local regulations until such time as the structure was occupied by an entity other than the Forest Service. For the next three months, appellant made preparations to commence construction.

Despite the exemption, appellant agreed to let county officials monitor the construction. In March 1982, Frank Breckenridge, a county building official, learned during a routine inspection that the Forest Service was not the owner of the building or the land. On the basis of these facts and the knowledge that appellant only had a short term lease with the Forest Service, Breckenridge contacted Deputy County Counsel Jack Cohan. Cohan then requested that appellant provide the county with a copy of his lease with the Forest Service or other evidence that the development was a federal government project. Since appellant did not have a signed lease with the Forest Service, he submitted a memorandum from the federal leasing officer Hersko which stated "that if the building to be constructed . . . is to be for the sole occupancy of the Government, we will consider it as a bona fide Government project and authorize [appellant] to claim his right to be exempt from local government regulation."

Cohan also wrote to the general counsel for the United States Department of Agriculture (General Counsel), requesting an advisement whether the proposed construction was a federal project, in view of Cohan's perception of the absence "of a lease or other contractual relationship" between appellant and the Forest Service concerning the use of the building. The General Counsel responded by letter that the Forest Service would be responding to this question, and by telephone agreed with Cohan that the construction was not a government project. Mr. Hersko, who subsequently received a written opinion from the General Counsel, wrote the county stating that "we concur with you that the proposed development cannot be validly considered as a 'Federal' Project." This advisement later was confirmed by the supervisory contract specialist for the Forest Service who wrote that "this is *not* a United States Forest Service project . . . neither the Forest Service nor any other Federal Agency is involved in the proposal. The Forest Service has agreed with the builder, Mr. Carlie Smith, that if he constructs a building that fulfills our needs we will than [*sic*] lease space within that building."

As a result, appellant was denied the exemption and required to comply with respondent's "discretionary review process," the term for its procedure for obtaining land development approval from the county planning department. Appellant submitted to this process under protest. His payment of $60,000 for a construction loan fee, made after originally being notified of the exemption, was forfeited as a result of the delay caused by his compliance with the review process.

An environmental impact report for the development identified problems in the areas of vicinity traffic, on site parking, growth inducement, water source, and visual incompatibility. Appellant's first application for approval to the county was rejected and he submitted a second application. This application was approved by the board of supervisors after appellant agreed to increase the number of on site parking spaces and eliminate the automotive shop from the building plans. Appellant was also required to pay a substantial fee for off site road improvements.

Construction commenced in fall 1983, and the Forest Service began leasing the building from appellant in June 1984, a delay of almost 20 months.

During the court trial, Norman Tuttle, administrative officer for the United States Forest Service, testified that while the delay caused legal problems with the Forest Service's prior landlord, he was not aware of any Forest Service business that did not get accomplished. He also stated that the Forest Service did not prepare its own environmental analysis or study of the proposed new construction.

After the trial, judgment was entered in favor of respondent.

Appellant contends: (1) the imposition of the county's discretionary review process was preempted by the supremacy clause of the United States Constitution and the federal Intergovernmental Cooperation Act; and (2) the trial court erred in ruling that appellant's claim for promissory estoppel was barred by Government Code section 818.8, the "misrepresentation immunity."

## DISCUSSION

*Supremacy Clause*

Appellant argues that federal law prohibits respondent's act of compelling him, as a private person doing business with the federal government, to submit to the county's land development permit process.

■ Appellant has raised the substantial federal question of whether he may share the sovereign immunity of the United States and avoid local regulation. (*United States* v. *Town of Windsor, Conn.* (D. Conn. 1980) 496 F.Supp. 581, 587; *Smith* v. *Lockheed Propulsion Co.* (1967) 247 Cal.App.2d 774, 787, fn. 5 [56 Cal.Rptr. 128, 29 A.L.R.3d 538].) Therefore, his claim that this case should be governed by California case law, which merely defines the legal extent of the state's sovereign immunity, is without merit.

■ The underlying rationale of the preemption doctrine is that the supremacy clause invalidates state laws that interfere with or are contrary to federal laws. (*Chicago & N. W. Tr. Co.* v. *Kalo Brick & Tile Co.* (1981) 450 U.S. 311, 317 [67 L.Ed.2d 258, 265, 101 S.Ct. 1124].) The corollary of this doctrine is that activities of the federal government are free from regulation by any state. (*Hancock* v. *Train* (1976) 426 U.S. 167, 178 [48 L.Ed.2d 555, 565, 96 S.Ct. 2006].)

■ In this case, appellant urges that there is a direct conflict between the delay resulting from respondent's discretionary review process and the Forest Service's demand to occupy appellant's building by a certain date. Appellant claims that this conflict disrupted both his activities in dealing with the Forest Service and the functions of the Forest Service itself.

There is no evidentiary basis for a finding of immunity with regard to the Forest Service. The record discloses that respondent's discretionary permit process was imposed on appellant and not the federal agency, and the Forest Service so recognized. The federal solicitation required appellant to comply with all required permits as a condition of the lease. It cannot be

reasonably inferred from this provision that the Forest Service considered respondent's permit process an interference with its activities. By the very terms of the solicitation, the federal government contemplated and approved of the exercise of local jurisdiction over the leased property.

Further, the record contains express statements by the Forest Service and Department of Agriculture personnel that appellant's construction was not a federal project or activity. This conclusion is supported by the substantial evidence in the record that appellant merely had an agreement with the Forest Service to lease the proposed building when the structure was completed, and purchased the land and constructed the building without federal assistance of any kind. In addition, the Forest Service had no apparent intention of producing a report of the construction project pursuant to federal law.

Appellant argues that the statements indicating there was no federal project are entitled to no weight because they were based on county counsel's misrepresentation that appellant did not have a contract with the federal government. Although appellant had an agreement with the Forest Service to lease office space to the agency, we do not find that any misrepresentation was made. County counsel validly concluded that appellant at the time had not signed a lease with the Forest Service, nor had he contracted with the Forest Service to "construct" a building.

Appellant's insistence that his construction of the building signified the land was being developed by the federal government is erroneous. The solicitation did not require either new construction[1] or the creation of a permanent federal facility, or even a lease purchase agreement. In the area of federal property management, a "federal project" is defined as either a public building "construction" or a lease "construction" project. (41 C.F.R. § 101-19.100 (a)(2).) Federal regulations indicate that leasing space in privately owned buildings is an alternative to the "construction" of a federal building. (41 C.F.R. § 101-18.100 (a).) "Construction" is defined as building a public building which includes planning, engineering, architectural, legal, fiscal, economic studies, designs and drawings and other similar actions necessary to construct a building. (41 C.F.R. § 101-19.003.3.) None of these activities were undertaken by the federal government in this case.

Since no federal function was being performed during the construction of the structure to be leased to the Forest Service, the activity was none other than a private project subject to local regulation.

---

[1] In fact, appellant's bid to offer the Timber's Restaurant to the Forest Service for its headquarters, as the result of a previous federal solicitation for office space, was rejected.

Appellant's reliance on 57 Ops.Cal.Atty.Gen. 42 (1974) is not inconsistent with our holding. The California Attorney General there concluded that local regulations do not apply whenever a federal "function" is being carried out. ■ As the opinion notes, in the absence of any interference with a federal function or power, a state may regulate the activities of a private developer on nonfederal land. (Pp. 45, 48.)

■ Appellant's contention that the Intergovernmental Cooperation Act preempts respondent's regulation also is unavailing. The act deals only with effect of federal programs and projects on local communities and, in fact, encourages cooperation with local zoning and land use practices. (40 U.S.C. § 531; 42 U.S.C. § 4231; 31 U.S.C. § 6506.)

■ Appellant next argues that the delay in construction interfered with Forest Service business, therefore a federal function was impaired. He states that the Forest Service suffered legal problems with its prior landlord before beginning its lease with him and also was eventually denied the use of automotive shop space by respondent.

However, appellant testified that the Forest Service agreed to the county's elimination of the automotive shop from the building plans. Further, although the Forest Service may have experienced some inconvenience by the delay, neither the power of the federal government to lease buildings from private parties (40 U.S.C. § 490) nor the administrative operations of the Forest Service itself were prohibited by respondent's building permit process. ■ Unless a state regulation places a prohibition on the federal government, a regulation which merely "touches" the activities of the government is not barred by the supremacy clause. (*Hancock* v. *Train, supra,* 426 U.S. at p. 179 [48 L.Ed.2d at p. 565]; *Chicago & N.W. Tr. Co.* v. *Kalo Brick & Tile Co., supra,* 450 U.S. at p. 317 [67 L.Ed.2d at p. 265].)

■ Turning to the effect of respondent's regulation on appellant's activities, we initially note that the decision of the Forest Service to deal with appellant in leasing its headquarters does not make appellant an instrumentality of the federal government. (See *United States* v. *Town of Windsor, Conn., supra,* 496 F.Supp. at p. 589, fn. 7.) He remained a distinct entity from the Government pursuing his own end of carrying on a commercial activity for profit without any ownership interest by the United States. (See *United States* v. *New Mexico* (1982) 455 U.S. 720, 739-740 [71 L.Ed.2d 580, 595-596, 102 S.Ct. 1373]; *Montgomery* v. *Town of Sherburne* (1986) 147 Vt. 191 [514 A.2d 702, 703-704].)

■ The United States Supreme Court has refused to recognize a sweeping grant of sovereign immunity beyond the national government itself,

consistently ruling that those who independently contract to furnish supplies or render services to the federal government are not entitled to share in the immunity. (*Penn Dairies* v. *Milk Control Comm'n.* (1943) 318 U.S. 261 [87 L.Ed. 748, 63 S.Ct. 617]; *Alabama* v. *King & Boozer* (1941) 314 U.S. 1 [86 L.Ed. 3, 62 S.Ct. 43, 140 A.L.R. 615]; *Stewart & Co.* v. *Sadrakula* (1939) 309 U.S. 94 [84 L.Ed. 596, 60 S.Ct. 431, 127 A.L.R. 821]; *James* v. *Dravo Contracting Co.* (1937) 302 U.S. 134 [82 L Ed 155, 58 S.Ct. 208, 114 A.L.R. 318]; *United States* v. *New Mexico, supra,* 455 U.S. 720.) This refusal is based on the premise that some burdens are inevitably imposed on the national government and are normal incidents of the operation of a dual system of government. (*Penn Dairies* v. *Milk Control Comm'n., supra,* 318 U.S. at pp. 270-271 [87 L.Ed. at pp. 753-754].) As long as the state or local regulation is laid directly on the contractor and his property and does not frustrate the execution of the contract with the federal government, the regulation is constitutionally permissible. (*James* v. *Dravo Contracting Co., supra,* 302 U.S. at pp. 153-155 [82 L.Ed. at pp. 168-170].)

■ Where the burden of state or local regulation falls only on those with whom the federal government deals, the regulation is barred by the supremacy clause only if it conflicts with a federal statute or discriminates against the government. (*United States* v. *Town of Windsor, Conn., supra,* 496 F.Supp. 581, 591.) ■ No claim is made here that respondent's land development permit process was discriminatorily applied to this construction project, and no such application is discernible from the record.

Moreover, appellant has not referred this court to any federal law intending that private landowners leasing office space to the federal government be extended an immunity against local building regulations. The only remotely relevant federal law cited by appellants, the Intergovernmental Cooperation Act, requires that state and local building regulations be considered to the fullest extent possible in planning federal projects. In the absence of such an express law or policy, this court is not allowed to speculate that Congress considers the Forest Service's interest in leasing space in privately owned buildings more important than respondent's interest in enforcing its zoning and land use laws. (See *Penn Dairies* v. *Milk Control Comm'n., supra,* 318 U.S. at p. 275 [87 L.Ed.2d at p. 756].)

Appellant's oral argument was commendably thorough and well presented. However, we conclude that the supremacy clause or other federal law is not offended by respondent's regulation of appellant's construction of the Los Padres National Forest headquarters.

*Promissory Estoppel*

 The issue of whether the trial court erred in ruling against appellant's "cause of action" for promissory estoppel is waived on appeal because the matter was not properly before the trial court.

Appellant arguably pled facts sufficient to constitute a claim for promissory estoppel in his original complaint. This complaint, however, was never served. Appellant's first amended complaint did not incorporate the allegations relating to this theory contained in his original complaint. He requested declaratory relief that the building to be constructed was exempt from respondent's permit process and declaratory and other forms of relief in relation to the imposed fees for off site road improvements. The only possible reference to a claim for promissory estoppel was the bare factual allegation that respondent withdrew its exemption from the permit process after appellant had relied on respondent's advice that the construction was exempt. This allegation alone is insufficient to put into issue the doctrine of equitable estoppel. (See *Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264].)

The trial court's conclusion, following respondent's pretrial objection to the promissory estoppel claim, that everyone was put on notice that the claim was being asserted because it was inherent in the situation surrounding the delayed construction, is erroneous. Although a complaint need not anticipate any defense or new matter affirmatively pled in the answer, when estoppel is an element of the cause of action it must be specially pled. (*Estate of Pieper* (1964) 224 Cal.App.2d 670, 691 [37 Cal.Rptr. 46]; *Williams* v. *Galloway* (1962) 211 Cal.App.2d 302, 305 [27 Cal.Rptr. 438].) All essential elements of estoppel must be alleged and from such facts estoppel must be clearly deducible therefrom. (*Fleishbein* v. *Western Auto S. Agency* (1937) 19 Cal.App.2d 424, 427-428 [65 P.2d 928].)

 Since the claim of promissory estoppel was not raised in the trial of the action by respondent's answer, we must abide by the general principle, in the interests of fairness to the opposing party and the orderly administration of justice, that a question not raised in the trial court will not be considered on appeal. (See *Williams* v. *Galloway, supra*, 211 Cal.App.2d 302.)

The judgment is affirmed.

Gilbert, J., and Abbe, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 12, 1988.