# William G. Dupuis *v.* Submarine Base Credit Union, Inc., et al.

House, C. J., Loiselle, Bogdanski, Longo and Barber, Js.

Argued December 9, 1975—decision released March 16, 1976

*James T. Haviland II,* town attorney, for the appellant (plaintiff).

*Matthew Shafner,* for the appellees (defendants).

BARBER, J. The plaintiff, who is the building inspector and zoning officer of the town of Groton, instituted this action in October, 1972, seeking to enjoin the defendants from continuing the construction of an office building and, further, seeking an order compelling the defendants to apply to the duly designated boards and officials of the town for permission to proceed with the construction. After a hearing, the Court of Common Pleas (*Santaniello, J.*) declined to issue a temporary restraining order and the defendants completed construction of the building. The plaintiff subsequently amended his complaint to claim an order compelling the defendants to apply to the appropriate commissions and officials for permission to use the building, and, in the event permission were denied, compelling the defendants to remove the building. The case was tried to the court upon a stipulation of facts which may be summarized as follows:

The named defendant, Submarine Base Credit Union, Inc., hereinafter referred to as the "credit union," is a nonstock corporation organized under the laws of this state, providing savings, lending, check cashing and counseling services for its 29,000 members. Membership in the credit union is limited to military personnel and their families and civil

service employees of the submarine base. The general manager and assistant treasurer of the credit union is also a defendant in this action.

On January 1, 1972, the United States, acting by the department of the navy, leased 1.15 acres of land to the credit union. The land, located off Gungywamp Road in Groton, had been acquired by the United States by condemnation at some time subsequent to February 1, 1940. The lease runs for twenty-five years and provides for the reversion of title to the building thereon to the United States unless the building can be removed before the expiration of the lease. The lease states that the use of the premises will effectuate the purposes of the Federal Credit Union Act, 12 U.S.C. §§ 1751–1790, and provides that the premises are limited to use as a "Credit Union at the Submarine Base" and that memberships be restricted to federal employees and members of their families.

During the summer and fall of 1972, the credit union constructed, at a cost of approximately $500,000, an office building on the leased premises which it is presently using as its main office and place of business. The defendants neither applied for nor obtained a building permit or a certificate of occupancy. The manager and the superintendent of the company engaged in construction of the building were told, upon inquiry at the building inspector's office, that the property did not come under the jurisdiction of the town of Groton.[1]

---

[1] The credit union building is apparently only one small part of a master plan developed by the navy for expansion of its facilities in the Groton area, and the present action apparently resulted from a breakdown of an agreement between the town of Groton and the navy concerning implementation of the master plan. See *Groton v. Laird*, 353 F. Sup. 344 (D. Conn.).

The court found in the defendants' favor on all issues. Numerous claims of law were raised by both parties, and the plaintiff has assigned error in the court's rulings in favor of the defendants on the following claims of law: (1) The defendant credit union, as a private corporation, erecting a building on federal lands for the furtherance of federal purposes, is immune from local zoning laws; (2) the town of Groton is estopped from enforcing its zoning laws and building codes with respect to the credit union building; and (3) the relief requested by the plaintiff is not appropriate or available in this case.

I

The defendants base their contention that they are immune from local zoning ordinances and building code provisions on two grounds. First, they argue that federal ownership of the leased land vests exclusive jurisdiction over that land in the federal government. Second, they claim that they are furthering a governmental purpose and, therefore, the supremacy clause (U.S. Const., art. VI cl. 2) exempts them from local regulation. The subordinate facts set forth in the finding do not support either of these claims.

The constitution declares that Congress shall have the power to exercise exclusive jurisdiction over any lands acquired by the United States "for the Erection of Forts, Magazines, dock–Yards, and other needful buildings."[2] Two prerequisites to the vest-

---

[2] "[U.S. Const., art. I § 8, cl. 17] To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by

ing of exclusive jurisdiction over such lands must be satisfied: the state in which the lands are located must consent, and the United States must accept such jurisdiction. *Silas Mason Co.* v. *Tax Commission,* 302 U.S. 186, 207, 58 S. Ct. 233, 82 L. Ed. 187. Connecticut has consented to the acquisition of land by the United States for the above named purposes, and has ceded exclusive jurisdiction over such lands to the federal government. General Statutes § 48-1.[3] But for all lands acquired by the United States since February 1, 1940, Congress has required that a federal official file with the governor of the state in which the lands are located a notice of acceptance of jurisdiction, either exclusive or partial, over the lands, and, in the absence of such a notice, "it shall be conclusively presumed that no such jurisdiction

the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards and other needful Buildings;—And

To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

[3] [General Statutes] Sec. 48-1. UNITED STATES; CEDING JURISDICTION TO. The consent of the state of Connecticut is given, in accordance with the seventeenth clause, eighth section, of the first article of the constitution of the United States, to the acquisition by the United States, by purchase, condemnation or otherwise, of any land in this state required for customhouses, courthouses, post offices, arsenals or other public buildings or for any other purposes of the government. Exclusive jurisdiction in and over any land so acquired by the United States is ceded to the United States for all purposes except the service of all civil and criminal process of the courts of this state; but the jurisdiction so ceded shall continue no longer than the United States owns such land. The jurisdiction ceded shall not vest until the United States has acquired the title to such lands by purchase, condemnation or otherwise; and, so long as such lands remain the property of the United States when acquired as aforesaid, the same shall be exempt from all state, county and municipal taxation, assessment or other charges." 1975 Public Acts, No. 75-46 provides for retrocession of jurisdiction.

has been accepted." 40 U.S.C. § 255;[4] see *Adams* v. *United States,* 319 U.S. 312, 63 S. Ct. 1122, 87 L. Ed. 1421. Although the parties stipulated that the land leased by the credit union had been acquired by the United States at some time subsequent to February 1, 1940, there was no evidence offered, nor does a search of the record reveal any, tending to prove that the statutory procedure for the acceptance of jurisdiction has been followed. Therefore, the trial court could not have properly concluded that exclusive jurisdiction over the leased land has been vested in the United States.

In the absence of an acceptance of either partial or exclusive jurisdiction, the United States' possession of lands is that of an ordinary proprietor. *Paul* v. *United States,* 371 U.S. 245, 264, 83 S. Ct. 426, 9 L. Ed. 2d 292; *Fort Leavenworth R. Co.* v. *Lowe,* 114 U.S. 525, 531, 5 S. Ct. 995, 29 L. Ed. 264. As noted in *James* v. *Dravo Contracting Co.,* 302 U.S. 134, 141–42, 58 S. Ct. 208, 82 L. Ed. 155: "[I]t is not unusual for the United States to own within a State

---

[4] 40 U.S.C. § 255 provides in part: "Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."

lands which are set apart and used for public purposes. Such ownership and use without more do not withdraw the lands from the jurisdiction of the State. The lands 'remain part of her territory and within the operation of her laws, save that the latter cannot affect the title of the United States or embarrass it in using the lands or interfere with its right of disposal.' [*Surplus Trading Co.* v. *Cook,* 281 U.S. 647, 650, 50 S. Ct. 455, 74 L. Ed. 1091.]" The Groton zoning ordinances and building code constitute a valid exercise of the state's police power; see *Euclid* v. *Ambler Realty Co.,* 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303; *State* v. *Hillman,* 110 Conn. 92, 100, 147 A. 294; and as such they are applicable to federal lands to the extent that they are not inconsistent with the federal purpose in acquiring the lands and are not contrary to federal statutes. See *James Stewart & Co.* v. *Sadrakula,* 309 U.S. 94, 60 S. Ct. 431, 84 L. Ed. 596.

The defendants claim that the acquisition of the land in question by the federal government predates the enactment by the town of Groton of its zoning ordinances and, therefore, the latter are inapplicable, citing *United States* v. *Mississippi Tax Commission,* 412 U.S. 363, 369-70, 93 S. Ct. 2183, 37 L. Ed. 2d 1; *Pacific Coast Dairy, Inc.* v. *Department of Agriculture,* 318 U.S. 285, 294, 63 S. Ct. 628, 87 L. Ed. 761; and *James Stewart & Co.* v. *Sadrakula,* supra. Those cases hold that, in situations where the federal government has taken exclusive jurisdiction over lands, state laws effective prior to the acquisition of jurisdiction remain in effect and state laws passed subsequent to the acquisition of jurisdiction have no effect. But no acquisition of exclusive jurisdiction having been shown in the present case, the cited cases are not apposite.

The defendants have not shown that the Groton building code and zoning ordinances are inconsistent with federal purposes or contrary to any federal laws. They have offered department of defense directive No. 1000.10, dated July 11, 1969, which states that it is defense department policy to make credit union facilities available to department personnel. The defendants have not explained, nor can we perceive, how this policy is inconsistent with a requirement that credit union office buildings comply with local building codes and zoning ordinances. The only federal laws referred to by the defendants are 12 U.S.C. §§ 1770 and 1771. The former section merely permits the discretionary allotment of space in federal buildings to credit unions organized under state law, and the latter section permits conversion from federal to state credit union and from state to federal credit union.

In the absence of exclusive jurisdiction acquired by the United States and also the absence of any conflicting federal law, we have no need to consider the supremacy clause of the United States constitution. See U.S. Const., art. VI, cl. 2; art. I § 8, cl. 17. Both *United States* v. *City of Chester,* 144 F.2d 415, 420 (3d Cir.), and *State* v. *Stonybrook, Inc.,* 149 Conn. 492, 495, 181 A.2d 601, cert. denied, 371 U.S. 185, 83 S. Ct. 265, 9 L. Ed. 2d 227, are cases involving government housing which, pursuant to the express terms of 42 U.S.C. § 1521 (b), are immune from federal, state, and municipal building regulations. See *Groton* v. *Laird,* 353 F. Sup. 344, 350 n.10 (D. Conn.), which cites the *City of Chester* case as its only authority for the statement that the navy is exempt from local zoning ordinances. The immunity of the United States from municipal building and zoning restrictions has been explained in terms of

sovereign immunity from suit. *Ann Arbor Township* v. *United States,* 93 F. Sup. 341 (D. Mich.). However, "it is argued more persuasively that the United States is supreme when it operates within its powers, and that neither a state nor its political subdivisions may interfere with it." 2 Anderson, American Law of Zoning § 9.07, p. 119; see 8 McQuillin, Municipal Corporations (3d. Ed., 1965 Rev.) § 25.16.

There is nothing in the record to suggest that the credit union, except for the innocuous lease provisions, is under the control or direction of the United States or its agency. On the other hand, it appears that the credit union operates independently, exclusive of appropriated or nonappropriated federal funds. See *Paul* v. *United States,* 371 U.S. 245, 263, 83 S. Ct. 426, 9 L. Ed. 2d 292. Upon the subordinate facts in this case, the credit union is a private lessee engaged in a proprietary function with no derivative right of immunity. *State* v. *Stonybrook, Inc.,* supra, 495–97; *Newington* v. *Campanella & Cardi Construction Co.,* 103 N.H. 211, 213, 168 A.2d 496; *Thanet Corporation* v. *Board of Adjustment,* 108 N.J. Super. 65, ·67-73, 260 A.2d 1 (opinion of *Carton, J.,* concurring). Since the subordinate facts do not support the trial court's conclusion that the erection of the credit union building on federally owned property is immune from local laws, a remand is necessary unless the court's alternative conclusion that the town of Groton is estopped from enforcing its building code is supported by the record.

## II

It has consistently been the law of this state that a town cannot be estopped by the unauthorized acts of its agents from enforcing its zoning laws. See,

e.g., *Carini* v. *Zoning Board of Appeals,* 164 Conn. 169, 174, 319 A.2d 390; *State* v. *Stonybrook, Inc.,* supra, 501; *Pallman* v. *East Haven,* 135 Conn. 593, 594, 67 A.2d 560. Nor may the defense of laches be invoked against a zoning authority. *Bianco* v. *Darien,* 157 Conn. 548, 555, 254 A.2d 898; *Wallingford* v. *Roberts,* 145 Conn. 682, 685, 146 A.2d 588. This specific rule with respect to zoning authorities must be placed in context as one aspect of the larger rule, explained in *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 53, 184 A.2d 797, that "[i]n general, estoppel may not be invoked against the government or a public agency functioning in its governmental capacity. 31 C.J.S., Estoppel, § 138. The general rule is qualified, however, in that one may invoke the doctrine where his action has been induced by the conduct of municipal officers and where he would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents. *Cities Service Oil Co.* v. *City of Des Plaines,* 21 Ill. 2d 157, 161, 171 N.E.2d 605. 'There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done.' *Fawcett* v. *New Haven Organ Co.,* 47 Conn. 224, 227; *State ex rel. DeGregorio* v. *Woodruff,* 135 Conn. 31, 36, 60 A.2d 653; *Tradesmens National Bank* v. *Minor,* 122 Conn. 419, 424, 190 A. 270. Moreover, it is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge.

*Linahan* v. *Linahan,* 131 Conn. 307, 327, 39 A.2d 895; *Myers* v. *Burke,* 120 Conn. 69, 76, 179 A. 88; *Weidemann* v. *Springfield Breweries Co.,* 78 Conn. 660, 664, 63 A. 162."

We have acknowledged, however, that there are situations in which the doctrine of equitable estoppel may be applicable to municipalities in the enforcement of zoning laws. See 3 Rathkopf, Law of Zoning & Planning (3d Ed.), c. 67 § 2, p. 67-3. In *Pallman* v. *East Haven,* supra, we noted (p. 594) that "[c]ases have undoubtedly arisen where relief has been granted [on the ground of estoppel] because the circumstances were unusual and the hardship great." In *Pet Car Products, Inc.* v. *Barnett,* supra, 53, citing *Cities Service Oil Co.* v. *City of Des Plaines,* supra, we stated that the general rule, pertaining to the invocation of the doctrine of estoppel against the government or a public agency functioning in its governmental capacity, is qualified when one "would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents." The courts have consistently held that the general rule applicable to the invocation of the doctrine of estoppel against municipal corporations should be limited and invoked (1) only with great caution, (2) only when the resulting violation has been unjustifiably *induced* by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the zoning or building regulations. 3 Rathkopf, op. cit., pp. 67-11—67-14; note, 1 A.L.R.2d 338, 353 § 8; 28 Am. Jur. 2d, Estoppel and Waiver, § 133; see *Cities Service Oil Co.* v. *City of Des Plaines,* supra; *Dallas* v. *Rosenthal,* 239 S.W.2d 636 (Tex. Civ. App.); *Murrell* v. *Wolff,* 408 S.W.2d 842 (Mo.).

The stipulated facts before the trial court reveal that prior to commencing with construction of the $500,000 credit union building, the project manager for the construction company involved telephoned the Groton building inspector's office and was told that no building permit was required for the project. On two other occasions, the construction superintendent of the project called the building inspector's office, once to inquire about a building permit and once to request the inspector to inspect the forms for the foundation footings. Both times the superintendent was told that the credit union project was on navy property and was not within the town's jurisdiction. The plaintiff did not serve a cease-work order upon the defendants until the project was approximately 30 percent complete. Although these facts would support a conclusion by the trial court that the zoning violation had been unjustifiably induced, they are insufficient to show by *whom* this reliance has been unjustifiably induced. The stipulation does not reveal whether the person who spoke with the project manager and superintendent was an official with authority such as the plaintiff or his assistant or whether that person was merely a clerk or part-time summer help. The parties also stipulated that there was no testimony that the plaintiff had any knowledge that the credit union building was being constructed for a private corporation prior to the date on which he served the cease-work order. The trial court, in holding the town to be estopped from enforcing its zoning ordinances, did not, in light of the facts presented, exercise the caution which the situation required.[5]

---

[5] The court's memorandum of decision perfunctorily states, without giving any reason therefor, that the issues are found for the defendants.

### III

The trial court did not reach a consideration of the propriety of injunctive relief. In his prayer for relief, the plaintiff requests, first, an order compelling the defendants to make proper application to the duly authorized boards and officials of the town for legal authority to use the building, and second, in the event such authority is not granted, an order compelling the defendants to remove the nonconforming building which has been erected. The granting of an injunction rests within the sound discretion of the court. *Jones* v. *Foote,* 165 Conn. 516, 521, 338 A.2d 467; *Scoville* v. *Ronalter,* 162 Conn. 67, 74, 291 A.2d 222. The relief granted must be compatible with the equities of the case. *Moore* v. *Serafin,* 163 Conn. 1, 8, 301 A.2d 238; *Gerald Park Improvement Assn., Inc.* v. *Bini,* 138 Conn. 232, 236, 83 A.2d 195. The issue of whether the relief demanded is appropriate to the circumstances is a question that must be considered and weighed upon trial.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.