[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the action of the defendant Zoning Board of Appeals in the Town of Old Lyme in upholding the decision of the zoning enforcement officer denying year-round occupancy of a certain dwelling situated at 27 Swan Avenue in the Town of Old Lyme. The cease and desist order was dated July 20, 1988. The appeal brought by the plaintiffs sought a reversal of the cease and desist order with respect to the subject premises. The defendant Board conducted a public hearing on the plaintiffs' application on September 20, 1988, and at a voting session held on September 21, 1988, denied the plaintiffs' application and caused a notice thereof to be issued which was published on October 4, 1988. The plaintiffs, Albert and Janice Giramonti, had purchased the subject premises on May 11, 1987, the premises being situated at and known as 27 Swan Avenue, Old Lyme, reference being made to Old Lyme Land Records, Volume 171, at page 190. A copy of said deed is a part of the record of this appeal. The premises are described as being 37 1/2 feet in width and to have a uniform depth of 75 feet. The record reflects that the plaintiff, Janice Giramonti, prior to purchase of the subject premises, had inspected certain Assessor's Records of the Town of Old Lyme which records constituted a portion of this appeal.
In due course, plaintiffs took possession of the premises. The premises are situated in an R-10 zone in the Town of Old Lyme. The subject premises fall within the confines of Article II, Section A (Residence Districts), A.1.1 of the Old Lyme Zoning Regulations, permitting single-family dwellings. The zoning regulations and map incident thereto were adopted by the Town of Old Lyme in 1957 and became effective in 1958. Pursuant to the provisions of the zoning regulations, Article II, Section A.2, the premises of the plaintiffs are a nonconforming lot by virtue of its size. The CT Page 644 improvements existing on the plaintiffs' lot consist of two structures which apparently, at least as to the their exterior appearance, were situated on said lot prior to 1957. The record discloses that within the two existing structures, there are a total of three units, two of which were described on the Assessor's Records as cottages and one as "a year-round residence." Multiple dwelling units are not allowed under the zoning regulations in an R-10 zone.
After going into possession of the subject premises, the plaintiffs apparently rented out on a seasonal basis the two units described as cottages and endeavored to occupy the other "year-round residence" on a year-round basis, either themselves or through tenants.
In the orderly conduct of enforcement of its zoning regulations, it came to the attention of the zoning enforcement officer that one of the units was being used on a year-round basis and in violation of Article I, Section C. 58 of the Old Lyme Zoning Regulations, defining seasonal use. Section C. 58 is to the following effect: "Seasonal use. The use of a structure for dwelling purposes between April 1 and November 15 only." Upon becoming apprised of the winter use of one of the units, the aforementioned cease and desist order was issued which is the subject of this appeal.
Aggrievement
The plaintiffs, pursuant to the provisions of Section 8-8 of the Connecticut General Statutes, are aggrieved in that they are owners of the subject premises, and the decision of the Board affects the use, enjoyment and occupancy that may be made of the subject premises.
A stipulation as to aggrievement executed by counsel for the plaintiffs and the defendant Board was filed with the court on July 11, 1990. On the basis of the Old Lyme Zoning Regulations, the lot owned by the plaintiffs, by virtue of its size, is a nonconforming lot. The minimum lot area square footage called for under the regulations for this R-10 zone is 10,000 square feet. The record before the Court indicates that the subject premises contain 2,812.50 square feet more or less. The zone in which the subject premises are situated permit single-family residences. Multiple dwelling units are not permitted in an R-10 zone. Pursuant to the provisions of Article I, Section E, of the Old Lyme Zoning Regulations, particular reference being made to Section E.1, is to the following effect:
E.1 Any nonconforming use of a CT Page 645 building or land may be continued and any building so existing which was designed, arranged, intended for or devoted to a nonconforming use, may be reconstructed and structurally altered, and the nonconforming use therein changed subject to the following regulations:
 E.1.3 No nonconforming use shall be extended or expanded.
It is the position of the defendant Board that the attempt to use one of the units on a year-round basis is an extension or expansion of a nonconforming use. On the basis of the three Assessor's cards which constituted part of the record for 1960, 1970 and 1980, no building permits were issued with regard to any improvements as to any of the structures on the plaintiffs' lot, except for some siding.
The record reflects that the premises apparently were improved from time to time over the years without the benefit of building permits, including the installation of a heating system in the unit where year-round use was sought. No permit was ever issued for the installation of any heating system. The record, therefore, reflects a nonconforming lot and nonconforming use even on a seasonal basis as to the subject premises.
It is the position of the Board that to allow year-round use of one of the units would be an extension and expansion of an existing nonconforming use. The plaintiffs claim that at the time of purchase, they made inquiry of the Assessor's Office as to certain factual data pertaining to the premises and claimed that one of the agents or servants of the Assessor represented that the premises consisted of "two cottages and one year-round unit." The actual reference on the Assessor's card for the 1980 property street card reads as follows. "Occupancy. Dwelling. 1F 2C."
The appeal to the defendant Board from the cease and desist order of the zoning enforcement officer was had pursuant to the provisions of Section 8-7 of the Connecticut General Statutes.
The first issue before the Court is whether or not the year-round use of one of the subject units constitutes an extension or expansion of an admittedly nonconforming use on a nonconforming lot. In Beerwort v. Zoning Board of Appeals,144 Conn. 731, the court held that a nonconforming trailer park could not change from seasonal use to allow for year-round CT Page 646 occupancy. See Weyls, et al v. Zoning Board of Appeals of the Town of Trumbull, 161 Conn. 516, wherein the court held that a
nonconforming cabin which was part of a summer use complex could not be winterized or used for year-round use. See also Cummings v. Tripp, 204 Conn. 67. The plaintiffs cite Seaside Properties, et al v. Zoning Board of Appeals of the Town of Fairfield, et al, 14 Conn. App. 638, as authority for their position that year-round use of one of the units does not constitute an expansion. While that case might be authority for year-round use of a single-family residence on a nonconforming lot, it cannot support the proposition of an existing nonconforming multi-unit structure on a nonconforming lot. Seaside involved three separate and distinct parcels of land.
The plaintiffs urge on the Court that their use of the premises during the winter months is specifically permitted under the provisions of Section A.1 of the zoning regulations. The plaintiffs urge on the Court that there is no specific provision anywhere in the Zoning Regulations for the Town of Old Lyme preventing conversion to year-round use of existing seasonal dwellings. Plaintiffs urge on the Court that their use on a year-round basis of one of the units is merely an intensification of a use already permitted. Even assuming that the Old Lyme Zoning Regulations do not, with particularity, cover the issue of winterization of seasonal structures for year-round use in order to accomplish such a purpose, certain building permits would have to be sought, and inspection of the work performed made by the appropriate officials of the town to insure that code requirements were met as well as issues as to fire safety, sanitation and the like. It would appear that improvements made as concerns the existing three units, except for some siding, were all done without the benefit of any permits and therefore presumably done in violation of any code regulations existing in the Town of Old Lyme. The defendant has indicated that should the Court allow the year-round use of one of the units, that there would then be no prohibition with regard to following the same course as to the other two units and establish year-round use for three dwelling units in an R-10 zone, which allows for single-family residences only, and all this on a nonconforming lot.
Having in mind that one of the primary objectives of zoning regulations is to reduce nonconformity to conformity as expeditiously as may be done, to allow the year-round use of one unit of two structures presently constituting a nonconforming use on a nonconforming lot would fly in the face of that proposition.
The plaintiffs also claim the Town of Old Lyme CT Page 647 should be estopped from enforcing against the plaintiffs any claimed violation on the plaintiffs' part of the provisions of Article I, Section E.1.3, in that they relied upon the aforementioned notation on the Assessor's card for 1980 on the property card and the claimed verbal representation or comments of some unidentified individual physically in the Assessor's Office at the time inquiry was made. The record indicates that except for the inquiry at the Assessor's Office that no other reasonable or indepth inquiry was made with regard to the zoning status of the subject premises.
No inquiry was made at any planning or zoning office, sanitarian or building inspector and no request was made for any written statement as to the zoning status of the subject premises from any recognized or duly constituted officer or agent of the Town of Old Lyme.
In order for the plaintiffs to prevail on the issue of estoppel as to a town, two essential elements are required. The agent, servant or representative of the town must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief and the other party influenced thereby must actually change his position or do some act to his injury which he otherwise would not have done.
Moreover, it is the burden of the person claiming the estoppel to show that he or she exercised due diligence to ascertain the true state of affairs and had no other convenient means of acquiring that knowledge. See Dupuis v. Submarine Base Credit Union, Inc., 170 Conn. 344.
While the Court recognizes that a lay person may well not be as conversant as an attorney or realtor with the wide range of matters that pertain to real estate, there were a variety of reasonable inexpensive avenues available to the plaintiffs whereby a comprehensive determination of the actual zoning status of the property could have been determined prior to purchase.
The Zoning Board of Appeals was eminently correct in affirming the issuance of the cease and desist order by the zoning enforcement officer. To allow or permit year-round use under the existing circumstances would have the effect of exacerbating the existing total nonconforming lot size and use. The conduct of the defendant does not reach the level where the town should be estopped from enforcing its zoning regulations.
On the basis of the record before the Court, the CT Page 648 appeal of the plaintiffs is denied.
AUSTIN, J.