[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this foreclosure action the plaintiff, Connecticut Housing Investment Fund, Inc., on December 12, 1990, obtained a judgment of strict foreclosure of the property mortgaged to it by the defendant Green Street Associates Limited Partnership and, on June 10, CT Page 8047 1991, also obtained a deficiency judgment of $80,706.18 against only the defendant D. Phillip Binns. The issues remaining are those raised by the amended cross-complaint of the defendant J B Construction 
Contracting Services, Inc. against the City of Hartford, which alleges that the city "agreed to advance additional funds to J B through the Hartford Redevelopment Agency, for the purposes of funding the rehabilitation of the subject property." It is also alleged that "[i]n reliance on this promise, J B agreed to be the contractor for such rehabilitation, and to guarantee the note held by CHIF, but that the city "failed to provide such additional funding, to the special loss and damage of J B."
 I
The first issues are whether any enforceable promise was made by the defendant city to advance or grant additional funding for the project as claimed and the terms of such promise. General Statutes 8-126 (a) provides: "Action by any redevelopment agency shall be taken only on the majority vote of all the members." There is no evidence of any vote by the Hartford Redevelopment Agency (HRDA) approving or authorizing any grant to J B or to anyone regarding the Green Street project. The written contract (Ex. A) between the Agency and Green Street Associates dated September 8, 1988, and presumably incorporating prior negotiations and oral understandings, mentions no such grant. The plaintiff relies on the doctrine of promissory estoppel. The general rule that estoppel may not be invoked against a municipality is subject to an exception in some circumstances when the plaintiff has relied on the conduct of municipal officers that has induced his loss. Dupuis v. Submarine Base Credit Union, Inc., 170 Conn. 344, 353 (1976). Nevertheless, "[i]t is the burden of the person claiming estoppel to show he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." Id. "Estoppel against municipalities is therefore limited and may be invoked . . . (1) only with great caution, (2) only when the resulting [loss] has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive . . . ." Zoning Commission v. Lescynski, 188 Conn. 724,732 (1982). CT Page 8048
The first mention of any grant for the Green Street project is contained in a letter (Ex. B) from Lawrence Thompson, executive director of HRDA to the defendant Binns and his corporation, ARWE Development Corporation dated August 6, 1987: "2. The Agency is inviting you to make a request at this time for up to $50,000 in grant assistance, which funds will be available upon the sale of Parcel C-1 now scheduled to occur by the end of this year." The grant is next mentioned in a letter (Ex. C) to Thompson from Dean A. Iaiennaro, executive director of the Connecticut Housing Investment Fund, Inc. (CHIF) dated April 8, 1988, which refers to the $50,000 grant as one of two conditions for a loan by CHIF to Binns for the Green Street project.
In his letter (Ex. D) of June 20, 1988 to Binns, however, Thompson does not use the term "grant" in referring to the $50,000: "As we have previously discussed, the Agency is attempting to assist your project through an understanding we have with Renaissance Place Associates (RPA), the approved developer of a major mixed-use project in downtown Hartford, that upon sale of the Agency's land to RPA, RPA will provide $50,000 to your project to be used for site preparation expenses." The mortgage commitment letter (Ex. 6) dated July 1, 1988, issued by CHIF and accepted by Binns and J B, as evidenced by their signing a copy thereof, removed the $50,000 grant from HRDA as a condition for the loan. Earlier drafts (Ex. E F) of this letter had contained such a condition: "Borrowers must evidence the receipt of $50,000 from the City of Hartford Redevelopment Agency before funds from CHIF are advanced."
At the time the contract for the land purchase (Ex. A) and the mortgage deed (Ex. I) were executed, September 8, 1988, (CHIF agreed to accept, as a substitute for the $50,000 grant, a $17,000 deposit by Binns and a $33,000 guarantee to expire after 120 days signed by Richard Suisman. A CHIF staff internal memorandum, dated September 9, 1988, nevertheless, refers to the grant: "The Redevelopment Agency will be making a grant of $50,000 to this project." This statement is ambiguous in that it may refer simply to the $50,000 payment mentioned in Thompson's June 20, 1988 letter to Binns indicating that such a payment would be made upon the sale of the Renaissance Place land to the developer, an event that never occurred. There is no evidence that, at the time J B became CT Page 8049 involved in the project or signed as a guarantor of the mortgage, Thompson or another member of the HRDA staff had modified the unfulfilled condition to which the promise of a grant was subject. Both Iaiennaro and Brendan Durkin, J B's president, testified that they knew that the $50,000 grant depended on the sale of the land by the city to RPA. Approximately two years later, in August, 1990, the HRDA did make a further effort to obtain $50,000 to aid in the completion of the Green Street project by seeking authorization from the City Council for a grant from the Neighborhood Development Initiative Fund (see Ex. N, O). This effort, however, was unsuccessful.
From this evidence the court concludes that the only promise made by HRDA staff members was of a $50,000 grant conditioned upon an event that never occurred, viz., the sale of land to Renaissance Place Associates (RPA). That condition is expressly set forth in Thompson's August 27, 1987, and his June 20, 1988, letters to Binns, and it could not have been modified by anything CHIF staff members, with whom J 
B's president had several discussions, said or did. Consequently, no breach of the conditional promise has been proved and J B cannot prevail in its cross complaint. It is unnecessary, therefore, to consider further the applicability of the promissory estoppel doctrine to this case.
 II
Even if Thompson's promise of a grant had not been subject to the unfulfilled condition of the land sale to RPA, the evidence does not establish the basis for a recovery by J B in this case. Any promise made was to Binns and his corporation, not to J B. The contract between J B and HRDA, even if Thomspon's promise were included, evidences no intent to benefit J B, which had a separate contract with Binns' corporation, ARWE Development Corporation, to manage the construction of the Green Street project. J B has suffered no loss from signing the guaranty, because CHIF has not attempted to enforce it against J B. The deficiency judgment CHIF obtained is solely against Binns.
J B claims, nevertheless, that it is entitled to recover the unpaid balance of its billings to Binns and his corporation because, it maintains, the project would have been successfully completed if the $50,000 CT Page 8050 grant had been made available, enabling Binns to pay his obligations. The court is not persuaded, however, that the infusion of $50,000 more into the project would have made the difference between success and failure. Iaiennaro, the executive director of CHIF, testified that Binns' performance was poor and that his inexperience and inability to resolve problems with various city agencies expeditiously had resulted in considerable delay of the project. The amount of the mortgage debt at the time of the foreclosure judgment, December 12, 1990, was $194,931.11 and the deficiency judgment, rendered on June 10, 1991, was $80,706.18. These figures indicate a discrepancy between the construction cost and the value of the work completed too great to have been bridged by a $50,000 grant.
J B claims damages of $64,997.85, the unpaid balance of its total, billings of $196,658.31 during the period June 30, 1988 to September 30, 1991 (Ex. P). Approximately $190,000 was billed prior to October 1, 1989, after which date virtually no construction work took place, according to the billings. (Ex. P). J 
B must have realized by December 31, 1988, the scheduled date (Ex. B) for the land sale to RPA, that no such transaction would take place and that it could not rely on the proposed $50,000 grant. J B continued the job, nevertheless, and accumulated billings of more than $100,000 from January 1, 1989 to August 31, 1989. (Ex. P). It could not reasonably have relied on the expectation of the grant after December 31, 1988. Even if Thompson's assurance of a $50,000 grant was one of the factors that induced J B to sign the guaranty and become involved in the project at its inception, that representation could not have influenced J B to continue its work after December 31, 1988, when the billings that are the subject of this suit accumulated. There is no reason to treat J 
B differently from any other creditor of Binns and his corporation.
It is ordered that judgment enter for the defendant city.
David M. Shea, State Trial Referee