[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE PLAINTIFF'S MOTION TO STRIKE (No. 111)
The plaintiff, Town of Guilford alleges that between June 1, 1993 and August 31, 1995, it accepted refuse for disposal from the defendant, DPL Refuse Service, Inc., a corporation engaged in the business of refuse removal and disposal, at the plaintiff's transfer station. It claims that DPL has failed to pay the requisite disposal fee for its use of the transfer station and that DPL continues to use the transfer station without paying its outstanding bill, thus accruing additional debt. The defendant has filed an answer along with several special defenses and counterclaims, and the plaintiff has now moved to strike the third through seventh special defenses and the first and second counterclaims.
"A motion to strike challenges the legal sufficiency of a pleading . . . [I]t admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. . . . if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." (Citations omitted). Mingachos v.CBS, Inc., 196 Conn. 91, 108-109, 491 A.2d 368 (1985). Further, the court must construe the facts in the pleadings, which are the subject of the motion to strike, most favorably to the pleader.Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170,544 A.2d 1185 (1988).
"A motion to strike is the proper method of challenging the legal sufficiency of a special defense". Krasnow v. Christensen,40 Conn. Sup. 287, 288, 492 A.2d 850 (1985); Practice Book § 152(5). "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. Practice Book 164." Grant v. Bassman, 221 Conn. 465, CT Page 4213-EEE 472-73, 604 A.2d 814 (1992); see Bennett v. Automobile Ins. Co. ofHartford, 230 Conn. 795, 802, 646 A.2d 806, (1994).
The defendant's third special defense alleges that: "The plaintiff is in breach of its unilateral offer to contract dated May 28, 1991, which offer has been accepted on a monthly basis by the defendant. Contrary to the terms set forth therein, upon information and belief, Plaintiff has failed to deny transfer station access to the Defendant and has wrongfully extended credit to the Defendant."
Even construing this special defense in the light most favorable to the defendant, DPL has failed to demonstrate how the conduct attributed to the plaintiff would remove the defendant's obligation to pay its outstanding debt. The defendant's reliance on Jackson v. Lacy, 92 Conn. 256, 102 A. 584 (1917), which apparently permits a special defense for breach of an express contract in a quantum meruit action, is inapposite. The plaintiff's motion to strike the defendant's third special defense is therefore granted.
The defendant's fourth special defense alleges that "the Plaintiff's acts and practice of extending Defendant credit and failing to suspend Defendant's dumping rights has unfairly induced and deceived the Defendant into continuing to use Plaintiff's transfer station thereby accruing undisclosed fees, charges and interest," which actions allegedly violate the Connecticut Unfair Trade Practices Act (CUTPA). The Connecticut Unfair Trade Practices Act, General Statutes § 42-110b(a), provides in relevant part: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "[A] violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Citation omitted.). Web Press Services Corporation v.New London Motors, Inc., 203 Conn. 342, 355, 525 A.2d 57 (1987).
 "In determining when a practice is unfair, we have adopted the criteria set out in the `cigarette rule' by the federal trade commission . . . (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; CT Page 4213-FFF (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)] . . . ." (Citations omitted, internal quotation marks omitted.)
A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215,579 A.2d 69 (1990).
The plaintiff contends that the operation of the transfer station is not trade or commerce and that CUTPA does not lie against a municipality where the municipality is conducting a governmental function. The defendant claims that the operation of the transfer station may be a government function, but that it is also a form of trade or commerce.
Town of Stratford v. Siciliano, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 296847 (August 5, 1993) (Leheny, J., 9 Conn. L. Rptr. 507, 8 CSCR 924), dealt with the alleged wrongful tax assessment on defendant's property. In her memorandum of decision, Judge Leheny discussed a municipality's liability under CUTPA:
 Under General Statutes 42-110(a)(1), as amended by Public Act 76-303, the General Assembly created an exception to CUTPA whereby CUTPA exempts `[t]ransactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States.' General Statutes 42-110c. In Connelly v. Housing Authority of the City of New Haven, 213 Conn. 354, 567 A.2d 1212 (1990) the court held that since a municipal housing authority was subject to pervasive state and federal regulations it was exempt from CUTPA under the plain language of General Statutes 42-110c. Id., 362-63. The court also noted that the Federal Trade Commission Act (hereinafter the "FTCA"), the act upon which CUTPA is based, had not been applied to an act of a local public agency. Id., 363-64; see also Stacking Contracting Services, Inc. v. Town of Stratford, 5 Conn. L. Rptr. 233 (October 28, 1991) (Murray, J.) (CUTPA does not lie against a municipality.); Metropolitan District Commission v. Miller, 5 Conn. L. Rptr. 44, 6 CSCR 919
(September 25, 1991) (Wagner, J.) (CUTPA does not apply to a public agency.); French v. Wallingford Board of Education, 3 Conn. L. Rptr. 59 (December 20, 1990) (Berdon, J.) (CUTPA does not apply to municipalities, and therefore has no application to CT Page 4213-GGG the defendant Board of Education); Chernet v. Wilton, 2 Conn. L. Rptr. 475-76) (September 28, 1990) (Cioffi, J.) (no cause of action under CUTPA lies against a municipality for injuries received in a near drowning at a recreational facility operated by the municipality.); Metcalfe v. Ridgefield, 1 Conn. L. Rptr. 553, 5 CSCR 329 (April 27, 1990) (Flynn, J.) (CUTPA does not apply to municipalities because the FTCA has not been applied to municipalities.)"
The defendant nonetheless claims that when a municipality engages in trade or commerce within the meaning of the Federal Trade Commission Act, it may be liable under CUTPA. In C ACarbone, Inc. v. Clarkstown, 511 U.S. 1, 6, 114 S.Ct. 1677
(1994), the Supreme Court declared that the processing and disposal of solid waste was commerce. The court stated: "what makes garbage a profitable business is not its own worth but the fact that its possessor must pay to get rid of it. In other words, the article of commerce is not so much the solid waste itself, but rather the service of processing and disposing of it." Id., 6; see Oregon Waste Systems v. Environmental,511 U.S 114, ___ S.Ct. 1345 (1994); Connecticut Carting Co. v. Town ofEast Lyme, 2 Conn. Ops. 110, U.S. Dist. Ct. (January 29, 1996) (Dorsey, P. J.) ("Solid waste, and the processing and disposing of it, is `commerce' under the Commerce Clause.").
In Connelly v. Housing Authority of the City of New Haven,
supra, 213 Conn. 360-61, however, the court stated:
 Even if it is assumed, arguendo, that the defendant is engaged in `trade' or `commerce' as defined by that act, the defendant nonetheless is exempted from CUTPA scrutiny because, as a municipal housing authority regulated by the United States department of housing and urban development (HUD), its actions fall within the ambit of General Statutes 42-110c.
In Connelly the defendant operated a housing authority which was subject to extensive state and federal regulations. Similarly, even though the United States Supreme Court has determined in the abstract that the removal and disposal of solid waste is "commerce", for purposes of determining whether a local ordinance violates the interstate commerce clause of the United States Constitution, the plaintiff Town of Guilford's operation of a trash transfer station would still fall under the exemptions in § 42-110c. The mere fact that the transfer station CT Page 4213-HHH involves commerce does not in and of itself prevent the application of the exemption provided to municipalities by the statute. Moreover, the operation of a transfer station and the disposal of solid waste are both pervasively regulated by the state. See e.g., Conn. Regulations §§ 22a2-12a, 22a-6b-700 and 701, and numerous other regulations under Title 22a.
In Chernet v. Town of Wilton, Superior Court, judicial district of Stamford at Stamford, Docket No. 108840 (September 28, 1990) (Cioffi, 2 Conn. L. Rptr. 475), the court struck the CUTPA count against the defendant Town, holding CUTPA should not be applied to a municipality. In Chernet, the defendant operated a municipal swimming pool where the plaintiff nearly drowned. Judge Cioffi cited Connelly and Metcalfe v. Town of Ridgefield[1] as being in accord. In Metcalfe, the court held that the provision of horseback riding lessons by the Town of Ridgefield did not come within the scope of the Federal Trade Commission (FTC) Act. Additionally, since the FTC Act has not been applied to a local public agency, the court would not apply CUTPA to the Town of Ridgefield.
In Barnes v. General Electric Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 529354 (July 25, 1995) (Hennessey, J., 14 Conn. L. Rptr. 455), the court was faced with a motion to strike a CUTPA count against the Town of Southington for the Town's sale of a former landfill. The court granted the motion, stating:
 The court initially notes that the plaintiffs have cited no authority in their brief to support their proposition that a CUTPA claim may be brought against a municipality. Against this background, this court is in accord with the numerous superior court decisions which have held that CUTPA is inapplicable to the acts of a municipality.
The defendant in this case has also provided the court with no such authority.[2] The plaintiff municipality is exempt from liability under § 42-110.[3] Even if its operation of a transfer station is also "commerce", the facts that it is being operated as a governmental function and that its operation is regulated preclude CUTPA liability.
The plaintiff also contends that the defendant failed to plead all of the essential elements of CUTPA cause of action. Specifically, the Town claims that the defendant failed to plead CT Page 4213-III that "the plaintiff's acts were immoral, malicious, or wanton", pursuant to the holding in Williams Ford v. Hartford Courant,232 Conn. 559, 591-92, 657 A.2d 212 (1995).
The plaintiffs are not entitled to have this court strike this count on this basis, however, because if the defendant's allegations are viewed in the light most favorable to it, it cannot be said as a matter of law that the allegations of unfair inducement and deception do not implicate the concepts of immorality, malice or wantonness. Based on the plaintiff's status as a municipality, however, its motion to strike the defendant's fourth special defense is granted.
The defendant's fifth special defense is based on the doctrine of waiver. The defendant alleges that it has been paying plaintiff and plaintiff has been continually accepting monthly payments from the defendant in arrears. Its sixth special defense claims that the plaintiff is barred by the doctrine of estoppel.
"Waiver is the intentional relinquishment of a known right."Heyman Associates No. 1 v. Insurance Co. of Penn., 231 Conn. 756,777, 653 A.2d 122 (1995); Wadia Enterprises, Inc. v. Hirschfeld,224 Conn. 240, 251, 618 A.2d 506 (1992). There can be either express waiver or implied waiver. Hanover Insurance Co. v.Fireman's Fund Insurance Co., 217 Conn. 340, 586 A.2d 567 (1991).
There is surely no allegation in the defendant's special defense that the plaintiff made express representations that it had waived its right to collect the outstanding balance. It therefore appears that the defendant is pleading implied waiver. Thus, it is relying on the conduct of the plaintiff in failing to terminate the defendant's dumping privileges and accepting those payments that were made by the defendant.
In Hanover, the court addressed the similarities between estoppel and implied waiver with the following language: "This court, while recognizing the analytic distinction between express waiver and estoppel, has held that `implied waivers and estoppel by conduct are so similar that they are nearly indistinguishable.'" Id., 352.
The general rule regarding estoppel was set forth in Pet CarProducts, Inc. v. Barnett, 150 Conn. 42, 53, 184 A.2d 797, as quoted in Dupuis v. Submarine Base Credit Union, Inc., 170 Conn. 344,353-54, 365 A.2d 1093 (1976): CT Page 4213-JJJ
 In general, estoppel may not be invoked against the government or a public agency functioning in its governmental capacity. 31 C.J.S., Estoppel, § 138. The general rule is qualified, however, in that one may invoke the doctrine where his action has been induced by the conduct of municipal officers and where he would be subjected to substantial loss if the municipality were permitted to negate the acts of its agents. . . .
 There are two essential elements to an estoppel — the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done. . . . Moreover, it is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge. (Internal citations and quotations omitted.)
Dupuis v. Submarine Base Credit Union, Inc., supra 170 Conn. 353-54.
The plaintiff alleges that the general rule is applicable, and that the use of estoppel against a municipality is prohibited. The defendant claims that the facts of this case come within an exception to the general rule as stated above and that it has carefully pleaded the two elements of estoppel, as set forth in Dupuis. A review of the sixth special defense, however, reveals that the defendant has not carefully pleaded these elements. It alleges only that it "has relied to its detriment that the use of plaintiff's transfer station was covered by the terms and conditions of the unilateral offer to contract dated May 28, 1991, pursuant to which the defendant would be denied access and not be extended credit."
As previously noted, the plaintiff's operation of the transfer station was the exercise of a governmental function. The defendant has failed to allege facts that would enable it to assert estoppel as a special defense against a municipality. The plaintiff's motion to strike the defendant's fifth and sixth special defenses is therefore granted.
The defendant's seventh special defense is based on laches. CT Page 4213-KKK "Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." Emerick v. Emerick, 28 Conn. App. 794,803-04 (1992). "Such prejudice results if the defendants are led to change their position with respect to the matter in question."Nauss v. Pinkes, 2 Conn. App. 400, 411, cert. denied. 194 Conn. 808
(1984). The general rule, however, is that "[e]quitable doctrines such as laches may not be invoked against a governmental agency." Commissioner of Motor Vehicles v. Dezmilo Co., Inc., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 327671 (June 5, 1987) (Ripley, J.,2 CSCR 880-81); see Dupuis v. Submarine Base Credit Union, Inc.,
supra, 170 Conn. 353.
The defendant has failed to establish an exception to the general rule. Its reliance on the operation of the transfer station as commerce and not as a governmental function has been previously dealt with. In light of that conclusion and the foregoing discussion on estoppel and waiver, the plaintiff's motion to strike the defendant's seventh special defense is granted.
"A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim." Fairfield Lease Corp. v. Romano's Auto Service,4 Conn. App. 495, 496, 236 A.2d 104 (1985); Practice Book § 152(5). The defendant's first counterclaim sounds in breach of contract. It alleges that it accepted a unilateral offer of express contract, dated May 28, 1991, by continuing to use the plaintiff's transfer station after the plaintiff published the contract. In part, the contract stated:
 3. Haulers must pay bill by the last day of the month or will be denied dumping privileges at the Transfer Station until the bill is paid in full.
 In addition, all haulers wishing to be extended credit will be required to sign the enclosed credit agreement.
The defendant claims that the plaintiff's failure to enforce the terms of the contract, by neither revoking the defendant's dumping privileges nor requiring the credit agreement be completed, caused the defendant to continue to make use of the transfer station and to drive itself further into debt. Construed in the light most favorable to the defendant, these alleged facts CT Page 4213-LLL set forth a cognizable cause of action for breach of contract. The plaintiff's motion to strike the defendant's first counterclaim is therefore denied.
The defendant's second counterclaim is based on CUTPA. Thus, the same reasoning which led to the striking of the defendant's fourth special defense is applicable here. The plaintiff's motion to strike this counterclaim is therefore granted.
In summary, the plaintiff's motion to strike the defendant's third, fourth, fifth, sixth and seventh special defenses and its second counterclaim is granted. The plaintiff's motion to strike the first counterclaim is denied.