[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs[1] appeal a decision of the Commissioner of the Department of Health (Commissioner), upholding an order of the Torrington Area Health District finding their restaurant in violation of the Connecticut Public Health Code.[2] The violation related to the use of louvered doors without screens which opened the front of the restaurant to the outer air. The Defendants maintain that the public health code requires screening of all openings in a restaurant to the outer air. The order precludes the plaintiffs from allowing their patrons, who are dining inside their restaurant; to experience open air dining.
Plaintiffs established that open air dining is a seasonably desirable experience in the competitive Litchfield restaurant market. The inability to have open air dining will cost them business. Plaintiffs have also invested several thousand dollars in the louvered doors, the use of which is frustrated by the health district order. Violations of the Public Health Code may also subject the individual plaintiffs to penalties including incarceration. The threat of such criminal sanction is sufficient to establish aggrievement. Kelly v. FOIC, 221 Conn. 300, 314
(1992); Maloney v. Pac, 183 Conn. 313, 321-22 (1981); Boardof Pardons v. FOIC, 210 Conn. 646, 658 (1989); and Kuser v.Orkis, 169 Conn. 66, 73 (1975). The plaintiffs are aggrieved by the Commissioner's decision upholding the order.
Plaintiffs in this appeal raise two issues that the Public Health Code regulation has been improperly applied to their restaurant. Plaintiffs characterize the issue in their brief as follows: "This appeal should be sustained because the Department of Public Health by ordering the plaintiffs to discontinue the use of louvered doors or install screens, has acted unreasonably CT Page 12126 arbitrarily, capriciously, illegally or in abuse of discretion . . . ." Plaintiffs also claim that the health district is estopped from issuing the order, based on actions of the sanitarian in reviewing the proposed building changes.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General statutes § 4-183 (j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v.Department of Health Services, 220 Conn. 86, 94 (1991).
Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of PublicUtility Control, 219 Conn. 51, 57-58 (1991). Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v.Commission on Hospitals Health Care, 182 Conn. 314, 318
(1980).
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General statutes, c. 54, 4-166 through 4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotation marks omitted.) Board of Education v. Freedom of InformationCT Page 12127Commission, 208 Conn. 442, 452 (1988).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United Parcel Service, Inc. v.Administrator, Unemployment Compensation Act, 209 Conn. 381,385 (1988).
The Public Health Code provides in § 19-13-B42 (d): "Effective measurers shall be taken to protect against the entrance into the establishment or breeding on the premises of vermin. During the season when flies are prevalent, all openings into the outer air shall be effectively screened and doors shall be provided to prevent the entrance of flies."
The Code defines food service establishment as "any place where food is prepared and intended for individual portion service, and includes the site at which individual portions are provided."
Plaintiffs argues that § 19-13-B42 (d) is clearly inapplicable to open air dining facilities. In such restaurants § 19-13-B42 (d) is only applicable to the kitchen and food storage areas. In plaintiffs' restaurant such areas are closed off by walls and a series of two doors.[3] Plaintiffs argue that if food can be served in outdoor restaurants, dining areas with no walls or ceiling, why can they not open the front wall of their restaurant to the open air?
Plaintiffs articulate a reasonable construction of the regulations, which if it were free to do so, the court might very well adopt. However, the court's authority in reviewing an agency's decision in the context of an administrative appeal is very circumscribed.
Clearly the Public Health Code is within the unique areas of experience and responsibility of the Commissioner of Public Health. General statutes §§ 19a-2a and 19a-36 designate extensive powers to the Commissioner regarding the adoption and CT Page 12128 enforcement of public health regulations.
Distinguishing between entirely outdoor dining facilities and plaintiffs' restaurant is not irrational. The Record contains a directive to local health districts from the Commissioner's Chief of the Environmental Health Section stating:
 It should be noted that § 19-13-B42 is silent on the physical requirements for outside dining except for requiring surfaces to be adequately drained and suitably finished so as to minimize dust and facilitate cleaning.
This suggests that cleaning a partially enclosed facility and an outdoor restaurant are different undertakings. The Commissioner has determined that there is a difference between outside dining areas and the partial opening of a restaurant to outside air.[4] Our Appellate Court has noted: "We are cognizant that the legislature, in permitting an agency to take prescribed action contemplates allowing that agency to draw a line somewhere and we see nothing arbitrary or illegal in such a ruling as long as it is supported by evidence and the proper application of the statute to the facts." Crescimanni v. Dept. of LiquorControl, 41 Conn. App. 83, 88 (1996).
In this case the line was drawn between outdoor dining and enclosed open air dining. There is no dispute as to the evidence relating to the structure of plaintiffs' restaurant, or that the regulation encompasses dining areas. The Commissioner's determination that the regulation is not applicable to outdoor dining is not irrational, arbitrary, capricious, illegal or an abuse of his discretion.
Estoppel
The plaintiffs estoppel argument is extremely difficult as they are seeking to estop enforcement of a public health regulation, broadly applicable to the many members of the public who would constitute plaintiffs' clientele.
The facts underlying plaintiffs estoppel argument are set forth in paragraphs 9-29 of the decision as follows:
9. Cathy Weber is the sanitarian for the Health CT Page 12129 District responsible for Litchfield, and is therefore, the person responsible for reviewing the proposed changes on behalf of the Health District. (Transcript 10/4/96, p. 152).
 10. Ms. Weber has been the sanitarian responsible for inspecting food establishments in the Litchfield area for nine years. (Transcript 10/4/96, pp. 148-149).
 11. MS. Weber conducted the initial inspection of the West street Grill in 1990, and has performed numerous inspections since. (Transcript 10/4/96, pp. 162-163; Exhibit 2).
 12. "Outer openings protected against entrance of insects/rodents" is Item 43 of the Food Service Establishment Inspection Report. (Exhibit 2).
 13. In the Inspection Report of May 11, 1990, Ms. Weber marked Item 43. (Exhibit 2).
 14. In the Inspection Report of October 25, 1990, Ms. Weber marked Item 43 and noted "seal openings to outside in basement." (Exhibit 2).
 15. In the Inspection Report of January 25, 1991, Ms. Weber marked Item 43 and noted "seal openings in basement." (Exhibit 2).
 16. In the Inspection Report of May 9, 1991, Ms. Weber marked Item 43 and noted "close outside door to basement." (Exhibit 2).
 17. In the Inspection Report of December 12, 1991, which was signed by James A. O'Shea, Ms. Weber marked Item 43. (Exhibit 2).
 18. In the Inspection Report of December 30, 1991, Ms. Weber marked Item 43 and noted "seal door in basement." (Exhibit 2).
 19. In the Inspection Report of May 21, 1992, Ms. Weber marked Item 43. (Exhibit 2). CT Page 12130
 20. In the Inspection Report of August 30, 1993, Ms. Weber marked Item 43 and noted "close outside door to basement." (Exhibit 2).
 21. In the Inspection Report of September 2, 1993, which was signed by James A. O'Shea, Ms. Weber marked Item 43 and noted "gap under door to outside must be filled. Secure screen in balcony." (Exhibit 2).
 22. In the Inspection Report of September 9, 1993, Ms. Weber marked Item 43 and noted "fill in gaps around door to prevent fly entrance." (Exhibit 2).
 23. "Presence of insects/rodents" is Item 42 of the Food Service Establishment Inspection Report; this was marked by Ms. Weber in the Inspection Report of September 9, 1993, where she noted "Many Flies". (Exhibit 2).
 24. In preparation for getting the Health District's approval, Mr. O'Shea discussed the proposed changes with Ms. Weber in approximately three to five phone conversations. In these conversations, he mentioned placing tables, chairs and a canopy in front of the building. He initially wanted to know about his seating capacity and if his license would allow the additional seating. (Transcript 8/28/96, p. 173).
 25. Mr. O'Shea and Mr. Kafferman appeared at an 8:00 a.m. meeting with Ms. Weber on or about June 19, 1995. They showed her a floor plan containing the proposed changes to the West street Grill. (Transcript 8/28/96, p. 86).
 26. The floor plan included a notation "Door Leafs Open." (Exhibit M).
 27. Ms. Weber understood the changes to be limited to those she had discussed with Mr. O'Shea in their phone conversations, and approved the plan with the notation "Canopy to cover all tables." (Transcript 10/4/96, pp. 176-177; and CT Page 12131 Exhibit M).
 28. Ms. Weber did not notice the notation "Door Leafs Open," and did not realize that the front of the restaurant would be opened to the outside. (Transcript 10/4/96, pp. 176-177).
 29. Once they had the approval of the Health District, Mr. O'Shea and Mr. Kafferman presented the plans to the Planning and Zoning Commission and continued on to obtain all the approvals for the modifications, and had the alterations made to the building. (Transcript 8/28/96, p. 87).
In discussing estoppel in the municipal zoning context our Supreme Court held:
 To summarize, in order for a court to invoke municipal estoppel, the aggrieved party must establish that: (1) an authorized agent of the municipality has done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents.
Bauer v. Waste Management of Connecticut, Inc.,234 Conn. 221, 446-47 (1995).
It has also been noted regarding estoppel, again in the municipal zoning context: "estoppel may be invoked (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations." Dupuis v. Submarine Base Credit Union, Inc.,170 Conn. 344, 354 (1976).
The plaintiffs establish aggrievement as a result of CT Page 12132 their loss of some business through the loss of some open air dining[5] and the expenditure for the renovations. These losses however, do not constitute the extent of loss which would equitably justify an order preventing the enforcement of a Public Health Code provision. Plaintiffs are free to, and do in fact, continue to operate a renowned restaurant, under the order. The open air dining option might improve operations or profitability, but in no way preclude the restaurant's operation. The screening of the front of the restaurant would involve some further expense and compromise of the desired ambience, but would allow for continued operation with the bi-fold doors open.
In order to invoke estoppel to the enforcement of a Public Health Code requirement, the loss would have to be extraordinary. There are no "special circumstances that exist which make it highly inequitable or oppressive to enforce the applicable law." Zotta v. Burns,8 Conn. App. 169, 175 (1986), West Hartford v. Reihel, 190 Conn. 114, 121
(1983).
In view of the plaintiffs inability to demonstrate the requisite degree of loss it is unnecessary to consider the other elements requisite for the invocation of estoppel.
The appeal is dismissed.
Robert F. McWeeny, J.